## UNITED STATES v. FORD.

(District Court. D. Montana. August 10, 1925.)

No. 1251.

**1. Contempt ☞27—Attorney held to have had actual knowledge of fictitious assignments presented in proceedings in error.**

Attorney charged with contempt of court *held* to have had actual knowledge of fictitious assignments presented in proceedings in error.

**2. Attorney and client ☞32—Duty of counsel to know contents presented for action by court, and to knowingly present none but documents true in statement of facts.**

It is duty of counsel to know contents of documents presented for action by court, and presentation is a representation that this duty has been performed, and it is also his duty to knowingly present none but documents true in their statement of facts.

**3. Contempt ☞27—Presenting improper or untrue documents without knowledge thereof is voluntary and intentional act, and is culpable and contemptuous.**

If counsel presents improper or untrue documents without knowledge thereof, it is his voluntary and intentional act, and is so far culpable and contemptuous that his other labors, haste, carelessness, neglect, or consequent ignorance is no defense thereto, but may go in mitigation.

**4. Contempt ☞2—There need not always be an evil quality of the mind to constitute contempt, but it may appear in neglect or indifference to duty.**

In contempt, there need not always be an evil quality of mind; but it suffices if these equivalents appear in forgetfulness, neglect, or failure of or indifference to duty or consequences.

**5. Contempt ☞27—Contempt shown by forgetfulness, neglect, or failure of or indifference to duty.**

In contempt proceeding, *held*, that there was at least forgetfulness, neglect, or failure of or indifference to duty or consequences, sufficient to constitute contempt in presenting for approval bill of exceptions containing exceptions not taken at trial.

**6. Contempt ☞10—Falsification of judicial proceedings or records is contempt, and more reprehensible when done by attorney.**

Falsification of judicial proceedings or records, or attempted falsification, intentionally in fact, or its equivalent, is contempt of authority of the court, and, when done by an attorney of the court, it is more reprehensible than by others.

Proceeding in contempt by the United States against S. C. Ford. Defendant found guilty of contempt.

John L. Slattery, U. S. Atty., of Helena, Mont.

W. D. Rankin, of Helena, Mont., for respondent.

BOURQUIN, District Judge. In these proceedings in contempt, the only issue is the sufficiency of the evidence to prove beyond reasonable doubt the charge of which the details sufficiently appear in what follows. The evidence is that during one Gordon Campbell's trial in this court, and including pending proceedings in error, defendant was and is his principal counsel. In that behalf, defendant filed a bill of exceptions containing 55 exceptions to rulings of the court, of which 27 exceptions have no existence in fact. Thereafter defendant, by agent, presented in chambers and without service and notice amended assignments of error for allowance by the court.

In this document the 15 assignments of the original are expanded to 38, and in both documents the assignments are almost wholly addressed to instructions. There is room for difference whether the amended assignments, in their allegations that to certain instructions "the defendant duly excepted," embrace more than the truth warrants. There is none, however, in respect to amended assignment 34, "that the trial court erred in denying defendant's motion for a directed verdict made by the defendant at the close of the government's case," for no such motion was at any time made.

In the matter of the bill of exceptions it appears that at the trial, one Rose, an official reporter in a state court, who not infrequently is employed in like, but private, capacity in this court, reported the evidence and furnished daily transcripts to counsel. Rose testified that defendant employed him to prepare the bill in skeleton form, and that without suggestion from defendant he inserted the fictitious exceptions; that he did this because, in a rush and hurry, he thought it the easier way; that in state practice all rulings during the trial are by statute deemed excepted to, yet counsel usually direct him to insert them in the bill; that in 1918 he last prepared such a bill; and that he knows his duty is to truly report and transcribe what occurs at trials. Defendant testified that he examined the bill, to locate where to insert exhibits, but did not compare it with the daily transcripts, and that he did not know fictitious exceptions had been inserted, until advised by the prosecution's proposed amendments to eliminate them, and to which defendant consented.

In argument, the district attorney states that, at a conference subsequent to the prosecution's proposed amendments, the defendant seemed surprised that the exceptions were fictitious. In the matter of the fictitious

amended assignment, defendant testified that he prepared the amended to supply the lack of specific quality in the original; that he then sent it to his agent, and merely asked him to present it, serve, and file (it appears the court directed the agent, Mr. Baldwin, to notice for hearing, and which was done upon notice prepared and served by the agent); that he has "not even a faint idea" how the fictitious assignment found place in the document; that he cannot believe he dictated it to the stenographer, has no recollection of having dictated it, and cannot believe he was so absent-minded as to dictate it, for that he knew the evidence sufficed to withstand a motion for a directed verdict, and for that reason be made none, and could not ask review of any its denial; that he was very busy at the time the amended assignments were prepared, his other work had accumulated and was absorbing all his time and attention, and so he may have been careless or negligent; that in dictating the amended he used the form of assignments in another case and gave it to the stenographer, but cannot say whether therein was an assignment addressed to denial of a like motion; that he had no intent to misrepresent anything, or to deceive this or any court, and greatly regrets the incidents.

Defendant did not expressly deny knowledge of the fictitious assignment, probably an oversight; but it is noteworthy that he did not directly impute fault to the stenographer, nor name the stenographer, nor produce the latter's notes, nor call the stenographer as a witness, nor account for that person's absence, nor even produce the form from which defendant testified he dictated. Thus defendant would have much inferred or conjectured which he fails to assert, and which, if true, might have been proven by better, if not direct, evidence. Then, too, with due allowance for defendant's embarrassment, his testimony is of a character more commonly presented to juries than to courts. It savors altogether too much of too common, if not desperate, defenses to escape the consequences of acts that cannot be successfully denied—some variety of mental irresponsibility, a "split personality," or other psychic infirmity, somnambulism, or other unconsciousness, amnesia, or the like, with subsequent recovery. And he is disingenuous in his assertion he has "not even a faint idea" how came the fictitious assignment in the amended. He knows, even as any ordinary intelligence knows (and he ought to credit the court with that much), that the stenographer inserted it either by

defendant's dictation, or from the form aforesaid, or of the stenographer's own motion.

And no reason appears why defendant could not have arrived at the truth and proven it here. So, too, defendant's belated registry of surprise in respect to the fictitious exceptions in the bill is not unusual, and likewise his consent that the exceptions be eliminated. No virtue can be claimed from yielding what is impossible to retain. It must not be overlooked that for the fictions in bill and assignments was for defendant and not the stenographers an urgent motive, viz. defendant's omissions at the trial to be by the fictions supplied, omissions which otherwise his client and others may characterize as gross neglect and fatal to the client's case.

It is true detection was likely. So is it in much of crime. But in the first, as so often in the last, the hope that springs eternal may have incited the attempt, may have stimulated a willingness to take a "sporting" chance, a chance to encounter an opposing counsel as busy or negligent as defendant assumes to have been.

[1] Rose's testimony is of an interested party, and in part, at least, has some of the aforesaid characteristics of defendant's. Why Rose could believe, or expect to be believed, that in his rush and hurry it was "easier" to insert additional and fictitious matter, is incomprehensible. If, however, on the whole, there be reasonable doubt that defendant had actual knowledge of the fictitious exceptions, there is none, as the court sees it, that he had actual knowledge of the fictitious assignment.

[2] Moreover, lack of actual knowledge does not constitute a defense, but only an extenuating circumstance in mitigation. It is counsel's duty to know the contents of documents he presents for action by the court, and presentation is a representation that this duty has been performed. It is presumed he knows. It is also counsel's duty to knowingly present none but documents true in their statement of facts, and therein again presentation is a representation of this duty performed—that counsel believes the facts to be true, and that in so far as they purport to relate counsel's acts they are true.

[3] In its action therein, the court perforce relies upon counsel, and justice depends upon performance of these duties by counsel. If counsel presents improper or untrue documents, in respect to which he has failed in any of the duties aforesaid, it is his voluntary and intentional act, and in any aspect

is so far culpable and contemptuous that his other labors, haste, carelessness, neglect, or consequent ignorance is no defense, but may go in mitigation.

[4, 5] So, too, of lack of evil intent. In contempt, as in many varieties of crime, not always needs there be an evil quality of the mind. It suffices if the latter's equivalent appears in forgetfulness, neglect, or failure of or indifference to duty or consequences. In any event, there is that much in this case.

[6] Little need be said to emphasize that the administration of justice depends upon the integrity of judicial proceedings and records. Falsification of either obstructs and defeats justice. In consequence, if falsification be done or attempted intentionally in fact or equivalent as aforesaid, it is contempt of the authority of the court, and usually also a crime. Done by an attorney of the court, it is more reprehensible than by others; for it is an abuse of his office, a betrayal of his trust; a violation of his oath, infidelity to the court to which, and not to his client, is counsel's first duty always, and a profanation of the temple of justice. All this is conceded here as everywhere.

It is found that defendant is guilty as charged of contempt of the authority of this court, and it is adjudged and ordered that he be fined in amount $300.