UNITED STATES of America

v.

SCHLICKSUP DRUG CO., Inc., a corporation, Defendant.

Cr. 3670.

United States District Court
S. D. Illinois, N. D.

July 30, 1962.

802

Edward R. Phelps, U. S. Dist. Atty., Springfield, Ill., Richard E. Eagleton, Asst. U. S. Atty., Peoria, Ill., for plaintiff.

John Cassidy, Cassidy & Cassidy, Peoria, Ill., for defendant.

MERCER, Chief Judge.

This cause coming on to be heard on the government's petition for order to show cause why the Schlicksup Drug Company, Inc., the defendant herein, should not be punished for criminal contempt, and the Court having heard the evidence submitted thereon by the parties hereto, and having examined the written arguments and briefs of counsel, and being now fully advised in the premises, finds as follows:

1. Defendant, Schlicksup Drug Company, Inc., is a corporation under the laws of the State of Illinois, and is and has been continuously since 1951 engaged at Peoria, Illinois, in the District and Division aforesaid, in the business of manufacturing, preparing, packing, distributing, and selling drug products.

2. Defendant has been continuously since 1951 and is now introducing and delivering for introduction and causing to be introduced and delivered for introduction into interstate commerce at Peoria, Illinois, certain of said drug products.

3. On October 21, 1953, this Court entered an order for temporary injunction enjoining defendant from directly or indirectly introducing or causing to be introduced, or delivering or causing to be delivered, for introduction into interstate commerce, at and from Peoria, Illinois, in violation of Section 331(a) of Title 21 U.S.C.A., articles of drugs adulterated within the meaning of Section 351(c) of said Title, because their strength differs from that which they are represented to possess and/or misbranded within the meaning of Section 352(a) of said Title because of false and misleading statements in the labeling of said drug with respect to the quantity of ingredients contained in said article.

4. Said temporary injunction was based on the Court's findings that:

(a) Much of the equipment used by the defendant in the manufacture and preparation of drug products was inadequate, unsuitable, in a poor state of repair, and inaccurate;

(b) There was laxity in the control of the identification, analysis, and formulas in the preparation of the firm's drug products;

(c) The deficiencies found in several finished products which were shipped in interstate commerce resulted from the inadequate manufacturing methods.

5. Said temporary injunction remained in full force and effect throughout the years 1956 and 1957.

6. The president and responsible managerial personnel of the Schlicksup Drug Company, Inc., had complete knowledge of the terms of said injunction from the time of its issuance.

7. Each of the products described in government's petition for order to show cause, to wit, Dapco–S, Double Hyatal, Douchett Powder, Vee–6, and Dumate are articles intended for use in the diagnosis, cure, mitigation, treatment or prevention of diseases in man, or intended to affect the structure or function of the body of man.

■ 8. The above-described products were introduced into interstate commerce by the defendant company between February and November of 1957.

9. The product, "Dapco–S," described in paragraph 3(a) of the government's petition, was 35 percent deficient in the amount of dextroamphetamine sulfate declared on its label when introduced into interstate commerce by defendant.

10. The label on the product, "Double Hyatal," as described in paragraph 3(b) of government's petition, states that each tablet supplies two complete doses. However, when introduced into interstate commerce by defendant, this product would release only one dose while in the human digestive system. The failure of one dose to be released is equivalent to a deficiency of 50 percent of the active ingredients, which the product's label states are contained in each tablet.

11. The product, "Douchett Powder," described in paragraph 3(c) of government's petition, when introduced by defendant into interstate commerce, contained 49 percent less than the amount of dried alum which the product's label stated was contained therein.

12. The product, "Vee–6," described in paragraph 3(d) of government's petition, when introduced into interstate commerce by defendant, was more than 20 percent deficient in the amount of niacinamide which its label stated it contained.

13. The label of the product, "Dumate," described in paragraph 3(e) of government's petition, states that each tablet supplies two complete doses. However, when introduced into interstate commerce by defendant, this product would release only one dose while in the human digestive system. The failure of one dose to be released is equivalent to a deficiency of 50 percent of the active ingredients, which the product's label states are contained in each tablet.

14. The product, "Vee–6," described in paragraph 3(f) of the government's petition, when introduced into interstate commerce by the defendant, was more than 20 percent deficient in the amount of niacinamide which its label stated it contained.

15. The basic criteria employed in establishing control methods by the Schlicksup Company and the consulting firm of Scientific Associates was economic. The specific changes effected were influenced entirely by the cost to the company rather than the desire to make certain that the actual strength and quantity of the drug ingredients was as the label declared them to be.

AND THE COURT adopts the following as its

## CONCLUSIONS OF LAW

■ 1. The articles prepared, packaged, and manufactured by the defendant, as described in paragraphs 3(a) through 3(f) of the government's petition, are articles of drugs within the meaning of Section 201(g) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C.A. § 321(g)).

■ 2. Defendant's lax and inadequate manufacturing practices have resulted in the production of drugs which are misbranded and adulterated under the terms of the Federal Food, Drug, and Cosmetic Act.

3. That the articles of drug described in paragraphs 3(a) through 3(f) of the government's petition, when introduced

into interstate commerce by defendant, were adulterated and misbranded within the meaning of Sections 501(c) and 502 (a) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C.A. §§ 351(c) and 352(a)).

4. Defendant's failure to eliminate the inadequacies in its manufacturing processes, was deliberate and not inadvertent and said violations are found to have been done wilfully and intentionally.

■ 5. Said introduction into interstate commerce of adulterated and misbranded drug products is a violation of Section 331(a) of Title 21 U.S.C.A. and also a violation of the order for temporary injunction issued by this Court on October 21, 1953.

■ 6. Although I am satisfied that the government need not prove willful intent, I find that the defendant corporation had such intent and, accordingly, is adjudged guilty of criminal contempt of the order for temporary injunction.

I have found that the defendant wilfully, knowingly and intentionally violated the injunction. Defendant has earnestly advanced the argument that there is a necessity that the government prove intent and because of the earnestness of defendant in this regard, I feel constrained to discuss this argument.

In a proceeding for criminal contempt, alleging disobedience of a temporary injunction restraining defendant from delivering into interstate commerce, in violation of 21 U.S.C.A. § 331(a), articles of drugs adulterated within the meaning of 21 U.S.C.A. § 351(c) or misbranded within the meaning of 21 U.S.C.A. § 352 (a), does the government have the burden of proving specific intent to violate the Act and the injunction?

The only pronouncement by any court upon this precise question is a dictum in United States v. Wilson-Williams, Inc., No. 149–6, S.D.N.Y. (1961). There the court said that specific intent is not an element of the government's proof upon a charge of criminal contempt for the violation of an injunction restraining the interstate shipment of misbranded drugs, for the reason that the proof required to sustain a contempt charge should not be greater than that required to sustain a criminal conviction under the Food, Drug, and Cosmetic Act. It would be, the court said, an anomaly to require proof of specific intent in the contempt situation when no such requirement was necessary to prove a criminal violation.

After a review of the precedents, I am convinced that the result suggested by Wilson-Williams is correct for the reasons hereinafter set forth. I do not necessarily agree that the anamoly suggested in that opinion is apt, but I think it must be recognized that, in the matter of the elements of proof required, where the violation of an injunction order may also constitute a substantive crime forbidden by a statute, the contempt partakes of an analogous relationship to the substantive crime.

Certainly, it is not necessary, as defendant seems to suggest, to ignore the statute in the contempt situation. Mr. Justice Frankfurter, speaking for the Court, in United States v. Dotterweich, 320 U.S. 277, at pages 280–281, 64 S.Ct. 134, at page 136, 88 L.Ed. 48, said of the Food, Drug, and Cosmetic Act:

"The prosecution to which Dotterweich was subjected is based on a now familiar type of legislation whereby penalties serve as effective means of regulation. Such legislation dispenses with the conventional requirements for criminal conduct—awareness of some wrongdoing. In the interest of a larger good it puts the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger. United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604. And so it is clear that shipments (of drugs) are 'punished by the statute if the article is misbranded (or adulterated), and that the article may be misbranded (or adulterated) without any conscious fraud at all. * * *'" Citing

United States v. Johnson, 221 U.S. 488, 497, 498, 31 S.Ct. 627, 55 L.Ed. 823.

At pages 284–285, 64 S.Ct. at page 138 Mr. Justice Frankfurter said:

"Hardship there doubtless may be under a statute which thus penalizes the transaction though consciousness of wrongdoing be totally wanting. Balancing relative hardships, Congress has preferred to place it upon those who have at least the opportunity of informing themselves of the existence of conditions imposed for the protection of consumers before sharing in illicit commerce, rather than to throw the hazard on the innocent public who are wholly helpless."

The Act is remedial, cf., United States v. Dotterweich, supra, and its provisions may be enforced with either an injunction proceeding under 21 U.S.C.A. § 332, or by a criminal proceeding under 21 U.S.C.A. § 333. In cases of flagrant violation, the Act expressly provides that the government, by alleging specific intent "to defraud or mislead", may charge a felony punishable by up to three years in prison, of a fine of not more than $10,000.00. 21 U.S.C.A. § 333(b).

■ A reading of the Act requires the recognition that a substantial interrelationship exists between the criminal remedial provisions of the Act and a contempt proceeding growing out of the violation of a remedial order based upon the Act. Adulteration and misbranding, as defined by the Act,[1] may be enjoined in the absence of proof of any specific intent in the violation found to exist. It would be anomalous, indeed, therefore, to require proof of specific intent in continued violations of the Act, and in violation of an injunction, before the court which issued the injunction could enforce it by a contempt proceeding. Such a result would not only defeat the purposes of the Act, but it might also sterilize the court's power to compel obedience to its orders.

■ Defendant argues that United States ex rel. Porter v. Kroger Grocery & Baking Co., 7 Cir., 163 F.2d 168, is controlling. Not so. Unquestionably, we are dealing with a criminal contempt here which is a punitive proceeding. Gompers v. Bucks Stove & R. Co., 221 U.S. 418, 31 S.Ct. 492, 498–499, 55 L.Ed. 797; Reich v. United States, 1 Cir., 239 F.2d 134, and a proceeding in which the defendant is accorded the fundamental safeguards of criminal procedure. Gompers v. Bucks Stove & R. Co., supra. It does not follow from that fact that intent is an essential element of the government's proof in every case. The opinion of the court in Kroger points out that intent may be imputed from the doing of an act prohibited by statute, although the act done does not involve turpitude. 163 F.2d at 173. So too with criminal contempt. In United States v. Ford, D. Mont., 9 F.2d 990, 992, the court said:

"In contempt, as in many varieties of crime, not always needs there be an evil quality of mind. It suffices if the latter's equivalent appears in forgetfulness, neglect, or failure of or indifference to duty or consequences."

The Kroger case was a contempt proceeding for violation of an injunction issued pursuant to the provisions of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq. Specific in-

---

1. "A drug or device shall be deemed to be adulterated—

&ast; &ast; &ast; &ast; &ast;

"(b) If it purports to be or is represented as a drug the name of which is recognized in an official compendium, and its strength differs from, or its quality or purity falls below, the standard set forth in such compendium. &ast; &ast; &ast;

"(c) If it is not subject to the provisions of subsection (b) of this section and its strength differs from, or its purity or quality falls below, that which it purports or is represented to possess." 21 U.S.C. A. § 351.

"A drug or device shall be deemed to be misbranded—

"(a) If its labeling is false or misleading in any particular." 21 U.S.C.A. § 352.

tent was an essential element of criminal sanctions imposed by that statute. Kroger admitted the overceiling price sales charged by the government, but specifically denied any intent to violate the ceiling price provisions of the Act. The request for a contempt order charged knowing, flagrant and wilful disobedience of the order, and the sole issue presented at a lengthy trial was the element of the intent with which the sales had been made. In view of that charge, and in view of the provisions of the OPA Act, the court held that specific intent must have been proved. At page 174, in discussing the import of the criminal provisions of the Act, the court's language implies that the contempt proceeding partook of the character of the substantive crimes created by the statute.

■ Finally, I reject defendant's argument that the government charged specific intent in its contempt petition, and that it must, therefore, bear the burden of proving that element. Reference is made by defendant to the following language from the petition:

"Thereafter, with full knowledge of said temporary injunction and in defiance of its terms, * * *, the defendant herein *did disobey and violate* said injunction * * *." (Emphasis by counsel).

It requires a distortion of meaning of the emphasized phrase, even if we throw in "defiance" as well, to read into that paragraph an allegation of specific intent.

Assuming, *arguendo*, however, that intent is thereby alleged, the allegation is surplusage, and not essential to a statement of the charge of contempt.

■ The function of a criminal contempt is the protection of the courts in the exercise of their allotted powers. Gompers v. Bucks Stove & R. Co., supra, 31 S.Ct. at 501. That function may not be thwarted by a surplusage of allegations in a petition calling a contempt to the court's attention. I do not read the Kroger case as requiring such a result. As the court there suggested, criminal contempt is not a constant and fixed substantive crime, inflexible in its requirements as to proof. On the contrary, specific intent may, or may not, be an essential element. Cf., 163 F.2d at 173. Whether it is or not depends upon the scope of the court's order, the nature of the practice enjoined and the character of the act alleged to constitute a contempt.

I hold that proof of intent and wilfullness is not an essential element of the contempt here charged.

It is the Order of the Court that the defendant pay a fine to the United States of America in the sum of Two Hundred and Fifty Dollars and that it pay the costs of suit.