**UNITED STATES of America,**
**Appellee,**

v.

**Byron E. PRUGH, Appellant.**

**No. 72-1710.**

United States Court of Appeals,
Eighth Circuit.

Argued May 14, 1973.

Decided June 8, 1973.

Kenneth K. Simon, Kansas City, Mo., for appellant.

Robert G. Ryan, Atty., Securities and Exchange Comm., Washington, D. C., for appellee.

Before GIBSON, HEANEY and ROSS, Circuit Judges.

PER CURIAM.

Defendant Byron Prugh, in a consent decree in the United States District Court for the Western District of Missouri entered October 18, 1968, was en-

joined from further violations of Sections 5 and 17(a) of the Securities Act of 1933 and Section 10(b) of the Securities Exchange Act of 1934. By an order entered on September 28, 1971, Prugh was ordered to show cause why he should not be held in contempt for engaging in activities prohibited by that decree. Only July 31, 1972, the court found Prugh guilty of criminal contempt and sentenced him to four months imprisonment. This appeal followed.

Prugh was alleged to have violated the terms of the consent decree by selling securities in violation of the registration provision of the Securities Act of 1933. Prugh held a 50 per cent interest in a controlled corporation, Mark V, Inc., which owned 950,000 shares of unregistered stock in W.I.D.E., Inc. He caused 500,000 shares of the W.I.D.E. stock to be exchanged for 700,000 shares of stock in the Continental Investment Corporation (CIC), an Arizona corporation which had been dormant since 1966. The shares of CIC stock were also unregistered. This exchange occurred on October 21, 1968. These shares were not issued in Prugh's name but in the names of various nominees. At Prugh's direction, certain of these unregistered shares were sold by George Smith and the proceeds divided between Smith and Prugh. The Court found, and it is not disputed, that as to the CIC stock Prugh had the status of an underwriter within the meaning of the Securities Act of 1933, and that as such, the distribution by him of the unregistered CIC stock was not exempt under Section 4(1) of the Act.

■■ Prugh first contends that his acts did not constitute a contempt since at the time of the transactions in question he was acting under the belief that the shares in CIC were "free trading" shares. The Court made the factual finding that, "Prugh deliberately closed his eyes to facts which were plainly to be seen and failed to make such an investigation as would be made by a reasonably prudent man under the circumstances." As a conclusion of law the

Court held "Byron E. Prugh knowingly, wilfully and intentionally disobeyed the Court's order of October 18, 1968, in violation of 18 U.S.C. § 401." In view of Prugh's prior experience in the securities field it seems reasonable to presume that he would know whether the securities he purchased were properly registered or not. If uncertain, he knew how to check on the registration. In view of the injunction which was entered against him it was incumbent on him to determine if his transactions were in violation of the terms of that injunction. United States v. Custer Channel Wing Corp., 376 F.2d 675, 682 (4th Cir.), cert. denied, 389 U.S. 850, 88 S.Ct. 38, 19 L.Ed.2d 119 (1967). In *Custer Channel Wing Corp.* the court stated:

> "The appellants had already breached the law and had been enjoined not to do so again; yet they knowingly repeated the selfsame forbidden acts. It is not consonant with reason, in these circumstances, to demand a more explicit demonstration of an evil mind in order to sustain the conviction for criminal contempt. See Roe v. United States, 316 F.2d 617, 623 (5th Cir. 1963), a prosecution for violation of section 5, holding that the 'best proof' of the requisite willfulness 'would be a prior conviction (defined by the court to include "other significant judicial actions such as an injunction") of the very same defendant for acts substantially identical.'

> "The facts cannot possibly be fitted into the pattern of an innocent stumbling into an unintended transgression. The injunction pointedly brought to the defendants' attention their past infraction of the Securities Act and laid down a specific admonitory prescription to guide their future course. As the District Court noted, *appellants, thus warned, should have been more than normally careful in their behavior not to repeat the offense.*" 376 F.2d at 682 (emphasis added).

Further that Court held that the elements which would constitute the of-

fense of criminal contempt in the violation of an injunction under the Securities Act of 1933 are coextensive with the elements of a direct criminal violation of that Act. 15 U.S.C. § 77x, 376 F.2d at 681. We have held:

"... the essential facts constituting a crime under § 77e(a)(2) [Section 5 of the Securities Act] are that '(1) a "security" was carried through the mails or in interstate commerce, (2) for the purpose of a sale or delivery after a sale, and (3) that *no registration statement was in effect as to such security at the time thereof* ....'" Kistner v. United States, 332 F.2d 978, 980–981 (8th Cir. 1964).

The Government was not required to show that Prugh knew that he was violating the terms of the injunction when he directed these transactions, but only to prove he intentionally conducted the proscribed stock transactions.

■ Prugh argues that he acted only in good faith reliance on the advice of counsel. His attorney did not issue an opinion letter and specifically stated that *his informal opinion was based only on the information which Prugh himself had given to the attorney.* The trial court found that Prugh did not act in good faith and such finding is fully supported by the record. Prugh's excuses on the cold record are lame and emit a hollow ring.

■ Finally Prugh argues that the trial court erred in failing to disqualify himself. This contention is patently frivolous in light of appellant's failure to show how he was or could have been prejudiced by such failure. In Unger v. Sarafite, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964), the Court considered a case where a state trial judge found guilty of contempt a witness in a trial who had refused to comply with the Court's instruction regarding his testimony and who had refused to answer proper questions which had been asked. The Supreme Court held, "We cannot assume that judges are so irascible and

sensitive that they cannot fairly and impartially deal with resistance to their authority. ..." 376 U.S. at 584, 84 S.Ct. at 847. In the instant case we are not dealing with a direct attack on the authority of the court which would cause a personal involvement of the judge. Rule 42(b), Fed.R.Crim.P. provides that a judge is only disqualified when the contempt charged involved disrespect to or criticism of the judge. Where such criticism or disrespect was absent a majority in Nilva v. United States, 352 U.S. 385, 396, 77 S.Ct. 431, 1 L.Ed.2d 415 (1957), required that there be an abuse of discretion before the failure to assign the contempt case to another judge would be held to be error. Appellant made no showing of an abuse here.

Judgment affirmed.