UNITED STATES of America, Plaintiff,

v.

I. D. RUSSELL LABORATORIES, a corporation, and Gregory P. Bergt, John Paul Russell, and William T. Russell, Defendants.

No. 76 CR 108–W–1.

United States District Court,
W. D. Missouri, W. D.

Nov. 1, 1977.

Memorandum and Order Nov. 8, 1977.

Anthony P. Nugent, Jr., First Asst. U.S. Atty., Kansas City, Mo., Stephen H. McNamara, Acting Chief Counsel, Food and Drug Administration, Harry Shulman, Food and Drug Administration, Rockville, Md., for plaintiff.

Thain Q. Blumer, Richard G. McMorris, Kansas City, Mo., for defendants.

Wayne A. Pokorny, Minnetonka, Minn., for defendant Bergt.

MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND FOR JUDGMENT OF ACQUITTAL AT THE CLOSE OF THE GOVERNMENT'S CASE

JOHN W. OLIVER, Chief Judge.

I.

This criminal contempt proceeding, like *Morissette v. United States*, 342 U.S. 246,

247, 72 S.Ct. 240, 96 L.Ed. 288 (1952), would have remained "a profoundly insignificant case" except that the government's basic theory of criminal liability raises questions both fundamental and far-reaching in federal criminal contempt law. The case was commenced by the filing of a petition for an order to show cause in criminal contempt for an alleged violation of a consent decree entered by this Court October 11, 1974, in Civil Action No. 74 CV 553–W–1, entitled *United States of America, Plaintiff, vs. I. D. Russell Laboratories, a corporation, and Dan B. Russell, John Paul Russell and William T. Russell, individual defendants.*

Experience in processing contempt proceedings establishes that government counsel charged with the duty of representing the United States generally, or some federal agency in particular, in connection with a contempt proceeding frequently are not familiar with Rule 42 of the Rules of Criminal Procedure, with 18 U.S.C. §§ 401 and 402, or with the history and the gloss placed on that rule and those provisions of the Code defining contempt, as contained in numerous Supreme Court decisions. In spite of the fact that district court contempt judgments suffer an abnormally high reversal rate, the reported cases suggest that the same mistakes in this exceedingly complicated and rapidly developing area of law are made over and over again.

Experience in contempt proceedings also demonstrates the frequent absence of informed communication between counsel for a particular federal agency and field personnel of that agency, between agency counsel and the Assistant United States Attorney assigned to prosecute a contempt proceeding, and between both sets of government counsel and the district judge in whose court a contempt prosecution may be filed. It is for those reasons that we state the procedural history of this case in more detail than would otherwise be necessary. We deem such a statement particularly necessary in light of the inability of the Court of Appeals for the Eighth Circuit to get the attention of the Food and Drug Administration in *United States v. Kramer Grocery Co.*, 418 F.2d 987 (8th Cir. 1969), a matter we shall later discuss in some detail.

When the petition for criminal contempt was filed on July 14, 1976, we noted that the Food and Drug Administration apparently had encountered difficulties in obtaining an inspection of the defendant I. D. Russell Laboratories on June 29, June 30, July 1, and July 2, 1976. Before issuance of the show cause order, the Court discussed the case with the Assistant United States Attorney who filed the case on behalf of the Food and Drug Administration and was assured that the Food and Drug Administration actually wanted its right of inspection confirmed by court order, rather than criminal sanctions. The order to show cause accordingly was entered requiring defendants to respond in writing on or before July 30, 1976. Defendants filed an answer alleging that the petition for criminal contempt was premature in that it was filed in violation of § 305 of the Food, Drug and Cosmetic Act, and prayed in the alternative that the petition be dismissed or that the defendants be afforded an opportunity to prove that the plaintiff's allegations were false and untrue.

On August 2, 1976, the government filed a trial memorandum obviously prepared by counsel for the Food and Drug Administration which suggested that rather than seeking to obtain remedial relief to obtain the inspection mandated by the consent decree, as the Court had been advised by the United States Attorney's office, the Food and Drug Administration apparently wanted to prove that the defendants were in criminal contempt and that they "must be so adjudged and sentenced accordingly," (page 8 of the government's August 2, 1976, trial memorandum).

The government's August 2, 1976, trial memorandum argued that "neither willfulness nor intent need be proved to convict for criminal contempt of an injunction entered under authority of the Federal Food, Drug and Cosmetic Act." The government further argued that "it has been specifically decided that intent is not an element in the charge of contempt for violation of an in-

junction issued under the Federal Food, Drug and Cosmetic Act." *United States v. Lit. Drug Co.*, 333 F.Supp. 990 (D.N.J.1971); *United States v. Schlicksup Drug Co.*, 206 F.Supp. 801 (S.D.Ill.1962); and an unreported 1961 Southern District of New York opinion, *United States v. Wilson-Williams, Inc.*, cited in *Schlicksup*, were relied upon to support the notion that "the government need neither allege nor prove intent . . in criminal contempt actions brought to punish violators of an injunction issued under the Federal Food, Drug and Cosmetic Act." (August 3, 1976 Trial memorandum at 7).

On August 10, 1976, the government filed a supplemental memorandum in response to defendants' answer. That response apparently was dictated to the United States Attorney's office by the office of the General Counsel of the Food and Drug Administration in Rockwell, Maryland, because an identical copy of the same supplemental memorandum was filed August 16, 1976. That response suggested that "the defendants have in fact violated Section 301(f), of the Food, Drug and Cosmetic Act, 21 U.S.C. § 331(f), in that they refuse to permit a lawful inspection by Food and Drug Investigators under 21 U.S.C. § 374." That memorandum suggested, however, that "prosecution for this violation may at some future time be recommended to the United States Attorney, however, no criminal charge pursuant to § 301(f) of the Act is contained in the Order to Show Cause here."

This Court assumed that the government's statement in its August 10–16, 1976, supplemental memorandum indicated that the Food and Drug Administration had retreated from the position stated in its August 2, 1976, trial memorandum and that it wished to obtain an inspection of defendants' plant, rather than attempting to put the defendants in jail. Such a position, of course, would have been consistent with the original advice given the Court by the United States Attorney's office in this district. Acting upon the assumption stated, we directed our law clerk to ask defendants' counsel whether defendants would volun-

tarily permit the inspection provided in the consent decree. Defendants' counsel wrote the Court on September 10, 1976, stating:

In response to your Clerk's recent inquiry, let me assure you that my clients have every intention to allow any inspection authorized by the law, or by Order of this Court. On no occasion have any of those clients intentionally violated the law or the Order of this Court.

Defendants' counsel pointed out various questions which had been raised in regard to the government's effort to inspect and also stated that "some 'personality' difference seems to be involved as defendants believe that Inspector James R. Lahar has taken a personal dislike to them and their business and perhaps a simple change of inspectors would reduce tension and allow inspections to proceed without difficulty."

On September 23, 1976, counsel for the defendants advised the Court that he had contacted the Assistant United States Attorney who filed the petition on behalf of the Food and Drug Administration and had advised him that "my clients have every intention of obeying the law and this Court's Order by allowing inspection." Counsel for the defendants further advised that arrangements would be made to have either an Assistant United States Attorney or someone from the Food and Drug Administration contact counsel for the defendants in regard to permitting "the proper inspection" and that "hopefully, any inspection required by the law may be performed without incident." We assumed that the matter was in the process of being worked out by counsel to the satisfaction of everyone concerned and that this case would eventually be dismissed as moot. The files and records in this case and in *United States of America, Plaintiff, vs. Articles of Drug, etc.* No. 77–0035–CV–W–4, show that the Food and Drug Administration in fact did obtain an inspection during January of 1977.

On March 11, 1977, however, the third Assistant United States Attorney to whom this case has been assigned advised the

Court that the Food and Drug Administration wished to proceed with the criminal contempt action regardless of the fact that an inspection had been made in January, 1977. Counsel for the defendants indicated surprise that the Food and Drug Administration wished to go forward with the criminal contempt proceeding because he "had understood that the inspections subsequent to your original action had gone quite satisfactorily."

On March 31, 1977, the Court received a letter from the attorney for the Food and Drug Division of the Food and Drug Administration in Rockwell, Maryland, which stated that "we emphasize that the filing of this contempt action was *not* for the purpose of obtaining an inspection. . . . Instead, this is a criminal case to obtain penal sanctions for contempt of court. . . The government's trial memorandum filed August 2, 1976, fully substantiates the propriety of criminal prosecution."

The March 31, 1977, letter from the attorney for the Food and Drug Administration made clear that the government wished to put the defendants in jail rather than obtain an inspection. The government therefore prepared and filed an amended petition for an order to show cause in criminal contempt on May 3, 1977. That amendment, in substance, attempted to incorporate the alleged violations of the Food, Drug, and Cosmetic Act which are the subject of the complaint for forfeiture filed against I. D. Russell Laboratories, Inc., on April 25, 1977, as Case No. 77–0035–CV–W–4, which pends before Judge Hunter of this Court. Counsel, however, agreed that the hearing of the amended petition for criminal contempt be limited to the allegations contained in the government's original petition for criminal contempt, as those paragraphs were copied verbatim in paragraphs 3, 4, 5, and 6 of the government's amended petition.

The case was set for trial on June 3, 1977. At that time the Court received the government's evidence. After the government rested its case, the parties agreed that the defendants' motion to dismiss and for acquittal at the close of the government's case should be filed in writing and briefed after receipt of the transcript of the hearing.

We have carefully considered defendants' motion and the briefs filed in support and in opposition. For reasons we shall fully state, defendants' motion to dismiss and for acquittal at the close of the government's case will be granted.

II.

The government accurately paraphrased the allegations of the petition for criminal contempt on page 3 of its memorandum in opposition to defendants' motion in the following language:

On June 29, 1976, I. D. Russell Company Laboratories and William T. Russell, defendants, violated section II(c) of the permanent injunction by refusing to grant FDA Investigator James R. Lahar access to their drug manufacturing establishment at 2464 Harrison Drive, Kansas City, Missouri, to enter or inspect the establishment to determine whether the requirements of the injunction were being complied with.

On June 30, 1976, I. D. Russell Company Laboratories and John Paul Russell, defendants, violated section II(c) of the permanent injunction by refusing to grant Investigator James R. Lahar access to enter or inspect their establishment to determine whether the requirements of the injunction were being complied with.

On July 1, 1976, I. D. Russell Company Laboratories and John Paul Russell, defendants, violated section II(c) of the permanent injunction by refusing to allow Investigators James R. Lahar and Noel G. Ferguson to inspect part of the drug manufacturing area at the I. D. Russell facility to determine whether the requirements of the injunction were being complied with.

On July 2, 1976, I. D. Russell Company Laboratories, John Paul Russell, William T. Russell, and Gregory P. Bergt, defendants, violated section II(c) of the permanent injunction by refusing to grant Investigators James R. Lahar and Noel G. Ferguson access to production and control

records for drugs manufactured in the I. D. Russell establishment, notwithstanding the records sought were necessary to evaluate whether defendants were complying with the requirements of the injunction.

It is undisputed that paragraph II(c) of the consent decree provided that "the Food and Drug Administration is given permission by the defendants to make such inspections of said plant, equipment, records, and articles of drug therein as the Food and Drug Administration deems necessary in order to determine that the requirements set forth hereinabove in Part I of subparagraph (c) have been met . . . ." We indicate at the outset our agreement with the government's view that "this contempt proceeding involves more than merely a series of individual offenses" and that the Court must view "the circumstances of the alleged acts in conjunction with the charges." (pp. 19 and 20 of government's memorandum in opposition to defendants' motion to dismiss and for acquittal).

In summarizing what the government believed it had established by the evidence, it stated on page 20 of its final brief:

On the first day, an inspection was disallowed because the one individual of obvious and undisputed authority at the plant said he was "not in charge;" on the second day, an inspection was disallowed because the defendants wanted "another inspector;" on the third day, an inspection of part of the manufacturing facility on the I. D. Russell premises was disallowed because it purportedly did not belong to them; and on the fourth day, an inspection of records was disallowed, not because the decree was limited, but because 21 U.S.C. 374 does not provide for a review of non-prescription drug records, or alternatively, because the investigator would not submit a written request for such records.

What the record actually shows is that the government inspector sought inspection on two separate and independent grounds of authority. Although the evidence is not completely clear on the point, the inspector

apparently believed that it was of paramount importance to rely on an assumed statutory right to inspect and thus to serve Form FD 482, a Food and Drug Administration Notice of Inspection which was prepared pursuant to, and which quotes, Section 704(a) of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 374(a). The inspector apparently viewed the various Notices of Inspection as his primary authority to support his right to inspect on each of the days in question except when he sought to inspect production records. The evidence, of course, shows that the government inspector also had a copy of a copy of the consent decree which he read to various of the defendants from time to time during the four-day period to support his demand to inspect the plant.

All the facts and circumstances, however, make clear, and we so find, that both the government inspector and all personnel in the Food and Drug Administration whom he consulted were acting completely without the benefit of legal counsel. It is also obvious that both the inspector and all Food and Drug Administration personnel did not realize that they could not lawfully proceed with an inspection based on 21 U.S.C. § 374 over the objection of the defendants unless they obtained an appropriate search warrant from a judicial officer, consistent with the requirements of the Fourth Amendment.

The record in this case establishes beyond reasonable doubt that all persons connected with the Food and Drug Administration were either unfamiliar with or chose to ignore the impact of *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), and *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), as specifically applied to Section 704(a), 21 U.S.C. § 374(a), of the Food, Drug, and Cosmetic Act by the Court of Appeals for the Eighth Circuit in *United States v. Kramer Grocery Co.*, 418 F.2d 987 (8th Cir. 1969).

In *Kramer*, then Chief Judge Henley's full and careful district court opinion in 294 F.Supp. 65 was expressly affirmed by the

Eighth Circuit. In light of the exhaustive treatment of the question in the district court, the Court of Appeals needed to state only:

At the outset, we affirm the holding of the trial court that consent is ordinarily required in warrantless searches of commercial premises by inspectors of FDA. *Camara* and *See* require this result. *United States v. Stanack Sales Co.*, 387 F.2d 849 (3rd Cir. 1968). [418 F.2d at 988–89].

In *Kramer*, as is true in this case, the evidence supported a finding that "the inspector asserted that he had authority to inspect and insisted on his right to do so" under the Notice of Inspection and that "the inspector believed he had the right to inspect without a warrant." 418 F.2d at 989.

We find that the evidence in this case established that both the inspector and all FDA personnel whom he consulted were proceeding on the notion that, so far as the Notice of Inspection was concerned, the defendants were required as a matter of law to permit the inspection and that the defendants were in violation of their legal duty when they did not permit the inspection under the Notices of Inspection which were served by the inspector during the four-day period.

We find that the inspector and the FDA personnel whom he consulted were proceeding on the basis that the consent decree was needed only for the purpose of permitting examination of production and control records, which the FDA people recognized that they were not entitled to even under their own expanded and erroneous view of the authority which they believed to be conferred by a Notice of Inspection. The fact that the FDA obtained only a copy of a copy of the consent decree is evidence that the FDA viewed the authority to inspect conferred by that decree as simply supplementary to that which they believed they had under Section 704(a), 21 U.S.C. § 374(a), of the Food, Drug, and Cosmetic Act.

The action of the FDA personnel involved in this case and the brief prepared by legal counsel for that agency clearly indicate that the FDA has not followed the suggestion of the Court of Appeals for the Eighth Circuit in *Kramer*:

We do not believe it necessary to speculate as to whether this decision, when considered with *Camara* and *See* will require the FDA to adopt a policy of informing owners of commercial properties that they have a right to refuse warrantless inspections.[5]

The Court in a footnote added:

[5] The Internal Revenue Service has adopted a procedure for advising taxpayers of their rights during investigations conducted by Special Agents of that Service, I.R.S.News Release IR–949, November 26, 1968. *See Cohen v. United States*, 405 F.2d 34, 39 (8th Cir. 1968), *cert. denied*, 394 U.S. 943, 81 S.Ct. 1274, 22 L.Ed.2d 478 (1969).

The government's factual summation of what actually happened omits entirely the manner in which the inspector attempted to base his right to inspect on two different grounds of authority and the confusion created by the FDS's primary reliance and use of the Notice of Inspection. The limited reliance upon the decree as authority to inspect is illustrated by the fact that the inspector had only an incomplete copy of a copy of the final decree of this Court in his possession. As above noted, the manner in which the inspector sought to establish his right to inspect under the court decree was without the benefit of legal counsel.

In fairness to the government, defendants were equally deficient in their failure to consult counsel in order that they be advised of their rights under the law. Had both parties consulted legal counsel, and had legal counsel properly advised their respective clients of the constitutional limitations imposed on the apparent authority conferred by Section 704(a) of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 374, we are confident that more precise attention would have been focused on the broader power of inspection obviously conferred by the consent decree.

Under the circumstances of this case, however, we must find that the government's evidence established that defendants

were entirely within their rights in refusing any inspection demanded pursuant to the various Notices of Inspection which were served upon them. The entire picture was obviously confused by defendants' apparent assumption that the inspector was acting within his rights to demand inspection independent of the consent decree.

The strong language used in the government's brief in opposition concerning the defendants' "obstinate resistance to a lawful inspection" (p. 5), defendants' "bold notion that no wrong was committed represents the epitome of insolence" (p. 10), and "no court has ever placed its imprimature on [defendants'] antics" (p. 12), completely ignores the confusion created by the FDA's assertion of dual authority and its primary reliance on its Notices of Inspection.

Indeed, the government's apparent view that the FDA could do no wrong and that a citizen must jump at its command is illustrated by its effort to sustain a criminal conviction for defendants' alleged failure to permit inspection of "part of the drug manufacturing area at the I. D. Russell facility," as alleged in paragraph 5 of the amended petition for criminal contempt. The inspector's testimony conclusively demonstrates that he was permitted to open the door of the mobile trailer, to look inside, and to see that it was empty. If such a charge were presented to a jury, it would take the jury longer to elect a foreman than it would to return a verdict of not guilty.

The documentary evidence in this case establishes that defendants were under the impression that "Investigators Lahar and Ferguson were going to return to I. D. Russell Company Laboratories and complete their inspection" as late as July 6, 1976. The evidence shows that there were arguments about whether the FDA was required to make a written request. Those arguments simply highlight the confusion created by the FDA effort to base its authority to inspect on both its Notice of Inspection and on the consent decree and negates the existence of any criminal intent under the circumstances.

A far different picture would have been presented by the government's evidence had the inspector been advised by competent legal counsel that he should avoid all possible confusion by basing his right to inspect solely upon the consent decree and by avoiding any effort whatever to inspect under the exceedingly limited authority conferred by a Notice of Inspection. Competent legal counsel would have also advised the inspector to serve a certified copy of this Court's original decree on the defendants as the first order of business and to advise defendants that they should immediately seek the effective assistance of their own legal counsel.

We find and conclude that the government was and is mistaken about the elements necessary to prove criminal contempt; that the government entertained and acted upon an erroneous view of its power to inspect; that such reliance produced such confusion that the evidence adduced not only failed to show that any violation of the consent decree was made with the requisite criminal intent but that the government failed to prove its case under its own mistaken theory of the law applicable to criminal contempt. *Cf. United States v. Hetzel*, 385 F.Supp. 1311 (W.D. Mo.1974).

### III.

This case attained a significance to which it was not entitled because of the government's concerted effort to establish a different rule of decision to be applied to criminal contempt proceedings involving court decrees entered pursuant to the Food, Drug, and Cosmetic Act than that applicable to any other criminal contempt proceeding. The government has insisted from the outset of this case that "intent is not an element in the charge of contempt for violation of an injunction issued under the Food, Drug and Cosmetic Act" and that "the government need neither allege nor prove intent . . . in criminal contempt actions brought to punish violators of an injunction issued under the Act."

The government's August 10–16, 1977, memorandum in opposition to defendants' pending motion to dismiss and for acquittal quoted verbatim the paragraph of its August 2, 1976, trial memorandum, which we noted in Part I of this opinion. In both memoranda the government relied on *Lit Drug, Schlicksup Drug Co.*, and *Wilson-Williams, Inc.*, to support the notion that the elements in a criminal contempt charge for violation of a Food, Drug, and Cosmetic Act injunction are fundamentally different from the elements in any other sort of criminal contempt proceeding. Because we suspect that the argument presented this Court is a standardized paragraph used in FDA briefs filed throughout the country, we believe it important to point out why we refuse to accept the notion that the government is not required to prove the same elements of criminal contempt in a case involving an FDA injunction as it must in any other criminal contempt case.

■ We state at the outset that all discussion of whether willful intent is an element which the government must prove beyond reasonable doubt in an FDA criminal contempt proceeding, as contained in the district court cases relied upon by the government in this case, is pure and unadulterated dicta. *Lit Drug Co.* did not even involve a criminal contempt proceeding. That case pended on the question of whether a preliminary injunction against admitted violations of the Food, Drug, and Cosmetic Act should be entered in the same form as a temporary restraining order which had earlier been issued in that case. In *Schlicksup*, the district court expressly found that "the defendant willfully, knowingly, and intentionally violated the injunction."

While it is true that *Schlicksup* discussed defendant's argument "that there is a necessity that the government prove intent," it is clear that what was said in that case in regard to whether proof of intent is an essential element of an FDA criminal contempt proceeding is the purest sort of dictum. And Chief Judge Mercer's reference in *Schlicksup* to the unreported district court opinion in *Wilson-Williams, Inc.* establishes that what was said in that case was also dictum. *See* 206 F.Supp. at 804. We therefore reject the dicta of *Lit Drug, Schlicksup* and *Wilson-Williams, Inc.* and turn to the question of whether FDA criminal contempt proceedings should be treated in some exceptional and unique manner.

The question of whether proof of criminal intent should be eliminated in criminal contempt proceedings involving alleged violations of the Food, Drug, and Cosmetic Act must be considered in light of general developments in the law applicable to criminal contempt in the most recent past. As recently as 1964 the Supreme Court, in *United States v. Barnett*, 376 U.S. 681, 84 S.Ct. 984, 12 L.Ed.2d 23 (1964), reaffirmed its then consistent view, which had then been most recently examined only six years earlier in *Green v. United States*, 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958), that no defendant had a right to jury trial in a criminal contempt case.

In *Barnett*, however, it was stated in a footnote, 376 U.S. at 694 n.12, 84 S.Ct. at 992, that "[s]ome members of the Court are of the view that, without regard to the seriousness of the offense, punishment by summary trial without a jury would be constitutionally limited to that penalty provided for petty offenses." When *Cheff v. Schnackenberg*, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966), was decided two years later, the dictum of that footnote in *Barnett*, for all practical purposes, became the law applicable to federal criminal contempt proceedings.

The total retreat from prior criminal contempt law was made less than ten years ago when the Court concluded in *Bloom v. Illinois*, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), that the Sixth and Fourteenth Amendments require jury trial for criminal contempt proceedings in both federal and State courts except for petty offenses. The Supreme Court decisions from *Green* in 1958 to *Bloom* in 1968 do not support the notion that some sort of exception may or should be created for enforcement of Food, Drug, and Cosmetic Act decrees.

A decree entered pursuant to that Act is no different from any other decree of court. No distinctions are drawn by 18 U.S.C. § 401(3), which defines the power of a federal court "to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance of its lawful writ, process, order, rule, decree, or command." That definition of power, first defined in the Act of 1831, does not suggest that any lawful decree of court is to be treated differently than any other lawful decree.

Many original court orders and decrees do not require a finding of criminal intent before they may be lawfully entered. This is true of practically all civil cases between private parties and it is also true of many actions based on various regulatory statutes. The cases draw no distinctions as to the necessity of proving criminal intent in a criminal contempt proceeding for an alleged violation of an order or decree entered in an ordinary civil case and in a case in which the order or decree was entered to enjoin violations of a particular regulatory statute where criminal intent may or may not be an element of proof in the original proceeding to obtain the decree.

The fact that the Food, Drug, and Cosmetic Act relates to matters which "touch phases of the lives and health of people which, in the circumstances of modern industrialism, are largely beyond self-protection," *United States v. Dotterweich*, 320 U.S. 277, 280, 64 S.Ct. 134, 136, 88 L.Ed. 48 (1943), does not afford an appropriate basis for the elimination of the essential element of proof of criminal intent required in every other criminal contempt proceeding regardless of the jurisdiction exercised by the Court for the entry of the particular order or decree involved. The recent constitutional developments which increase the constitutional strictures upon the use of criminal contempt generally do not suggest that the government's effort to have criminal contempt proceedings involving FDA injunctions viewed in an exceptional manner should or would be accepted by the Supreme Court.

From at least the time of *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 444, 31 S.Ct. 492, 499, 55 L.Ed. 797 (1911), it has been "certain that in proceedings for criminal contempt the defendant is presumed to be innocent, he must be proved to be guilty beyond a reasonable doubt, and cannot be compelled to testify against himself." In *United States ex rel. Shell Oil Co. v. Barco Corp.*, 430 F.2d 998, 1001 n.5 (8th Cir. 1970), the Court of Appeals for the Eighth Circuit reviewed the more recent Supreme Court contempt cases, including *Panico v. United States*, 375 U.S. 29, 84 S.Ct. 19, 11 L.Ed.2d 1 (1963); *Nilva v. United States*, 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415 (1957); and *United States v. United Mine Workers*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), to support its conclusion that 18 U.S.C. § 401 "has been construed to require a showing that the criminal condemnor acted with criminal intent." *United States v. Prugh*, 479 F.2d 611 (8th Cir. 1973), a criminal contempt case in which this Court tried and sentenced the defendant, was affirmed on the ground that the government proved beyond reasonable doubt that the defendant in that case "knowingly, wilfully, and intentionally disobeyed the Court's order of October 18, 1968, in violation of 18 U.S.C. § 401."

The Eighth Circuit opinions in *Barco Corp.* and in *Prugh* illustrate the immateriality of the nature of the court decree involved in the criminal contempt proceeding. *Barco Corp.* involved a decree declaring the validity of a patent and enjoining defendants from manufacture of compounds covered by the patent. Entry of such a decree obviously did not require a finding of criminal intent. *Prugh* involved a SEC injunction. Precisely the same rules of decision were applied in both cases in regard to the essential elements, including criminal intent, which must be proved beyond a reasonable doubt in order to sustain a criminal contempt charge. *United States v. Massey*, No. 77–1376, is the latest criminal contempt case decided by the Eighth Circuit. The per curiam opinion in that case affirmed then Chief Judge Becker's order finding

defendant "guilty of criminal contempt for his willful refusal to comply with this Court's December 13, 1976, order to testify before the United States grand jury" for the Western District of Missouri. The requisite elements to support a conviction of criminal contempt are so well settled in the Eighth Circuit that neither the district court nor the Court of Appeals ordered their opinions in *Massey* to be published.

All other circuits are in complete agreement with the Eighth Circuit's reading and application of the Supreme Court's criminal contempt cases. *See, e. g., Sykes v. United States*, 144 U.S.App.D.C. 53, 444 F.2d 928 (D.C.Cir. 1971) (reversing a criminal contempt conviction because "the record discloses no evidence of any criminal intent on the part of the appellant"); *In re Brown*, 147 U.S.App.D.C. 156, 454 F.2d 999 (D.C.Cir. 1971) (holding that "proof beyond a reasonable doubt that the alleged condemnor possessed the required intent must forerun a criminal contempt conviction"); *In re Farquhar*, 160 U.S.App.D.C. 295, 492 F.2d 561 (D.C.Cir. 1973) (reversing a criminal contempt conviction for failure of proof, holding that "criminal contempt requires both a contemptuous act and a wrongful state of mind"); *In re Joyce*, 506 F.2d 373 (5th Cir. 1975) (reversing a criminal contempt conviction with instructions to dismiss, holding that engrafted upon the language defining power to punish for criminal contempt under Section 401(3) "is the requirement of both a contemptuous act and a willful, contumacious, or reckless state of mind"); and *Richmond Black Police Officers v. City of Richmond*, 548 F.2d 123 (4th Cir. 1977) (reversing because "there was insufficient evidence to prove that beyond a reasonable doubt the defendants acted willfully, contumaciously, intentionally, with a wrongful state of mind").

We expressly reject the government's reading of *United States v. Custer Channel Wing Corp.*, 376 F.2d 675 (4th Cir. 1967) and *United States v. Greyhound Corp.*, 508 F.2d 529 (7th Cir. 1974). In both those cases the district judges expressly found that the criminal contemners had acted willfully under the circumstances. Indeed, the portion of *Custer Channel Wing Corp.* quoted with approval by the Eighth Circuit in *Prugh*, 479 F.2d at 612, shows that the Fourth Circuit was reviewing the sufficiency of the evidence to support findings that the defendants had "knowingly" acted with "the requisite willfulness" to support the district court's conviction.

*United States v. Kroger Grocery & Baking Co.*, 163 F.2d 168 (7th Cir. 1947) is the only case other than this case with which we are familiar in which the government argued that one charged with criminal contempt could be found guilty without proving beyond reasonable doubt that the defendant had deliberately, knowingly, and willfully violated a court decree. That case involved a decree entered under the Emergency Price Control Act. The defendant did not deny that a number of purchases had been made over ceiling prices but did deny that it had acted with criminal intent to violate the court order.

The case was tried before the district court and argued in the court of Appeals "on the theory that the intent with which the over-charges were made was immaterial, but if it was, the burden was upon the defendant to disprove such intent." *Id.* at 172. The Court of Appeals rejected the notion that one can be convicted of criminal contempt without proof of criminal intent for the reason that "the intent with which the over-charges were made is an essential element of the contempt charged and the burden was upon the plaintiff to establish such element beyond all reasonable doubt." *Id.* at 174.

It is interesting to note that the district court in *Kroger* had actually made findings that the defendant had in fact "knowingly, repeatedly, flagrantly, and willfully" violated the OPA injunction. *Id.* at 172. The Court of Appeals analyzed all the evidence adduced by the government and reversed the conviction because it concluded that "there is no substantial evidence to support the finding that defendant's overcharges were made deliberately, knowingly, and willfully. It follows that the judgment appealed from cannot stand." *Id.* at 177.

■ We find and conclude that the government's evidence in this case falls far short of establishing beyond reasonable doubt that the defendants acted with the requisite criminal intent to violate the consent judgment entered in Civil Action No. 74–CV–553–W–1 as alleged in paragraphs 3, 4, 5, and 6 of the government's amended petition for contempt. Indeed, we find and conclude in the alternative that because of the confused circumstances produced by the FDA's clearly erroneous view of its authority to inspect under a Notice of Inspection, the government even failed to prove the essential elements of its charges under its erroneous view of the law of criminal contempt. Defendants' pending motions therefore will be granted.

Although it is obvious that the Food and Drug Administration has disregarded the suggestion of the Court of Appeals, made in *United States v. Kramer*, 418 F.2d at 989, that it adopt a policy consistent with limited lawful authority conferred by a FDA Notice of Inspection, we believe it appropriate to suggest that the FDA consider adopting a policy under which FDA personnel would be required to seek legal assistance in all cases in which criminal contempt proceedings may be contemplated. We are confident that if the FDA inspector and other FDA personnel had been given proper legal advice before seeking the inspection involved in this case, that any criminal contempt proceeding which may have become necessary under the circumstances would have successfully avoided the difficulties encountered in the pending case.

For the reasons stated, it is

ORDERED (1) that defendants' motion to dismiss and for acquittal at the close of the government's case in chief should be and the same is hereby granted in regard to paragraphs 3, 4, 5, and 6 of the government's amended petition for criminal contempt. It is further

ORDERED (2) that the government shall advise the Court within ten (10) days whether it wishes to proceed further in this case, particularly in light of the litigation instituted by the government in *United States v. Articles of Drugs, etc.*, No. 77–0035–CV–W–4, which presently pends before Judge Hunter.

## MEMORANDUM AND ORDER DISMISSING REMAINDER OF CASE

On November 1, 1977, for reasons fully stated, we entered an order granting defendants' motion to dismiss and for acquittal at the close of the government's case in regard to paragraphs 3, 4, 5, and 6 of the government's amended petition for criminal contempt. On the same day, we entered a second order directing the government to advise the Court whether it wished to proceed further in connection with the remainder of the case, particularly in light of litigation instituted by the government in *United States v. Articles of Drugs, Etc.*, No. 77–0035–CV–W–4, which presently pends before Judge Hunter of this Court.

On November 7, 1977, the government filed a response to that order in which it advised that it does not wish to proceed further in connection with the remainder of the case. In light of the government's response, it is appropriate that an order be entered dismissing the remainder of the case, without prejudice, however, to any claim asserted by the government in the case which presently pends before Judge Hunter.

For the reasons stated, it is

ORDERED that the remainder of the above entitled case should be and the same is hereby dismissed without prejudice, however, to any claim alleged by the government in *United States v. Articles of Drugs, etc.*, No. 77–0035–W–4, which presently pends before Judge Hunter.