**UNITED STATES of America, Plaintiff,**

v.

**ASSOCIATED MILK PRODUCERS, INC., Defendant.**

**No. 74 CV 80–W–1.**

United States District Court, W. D. Missouri, W. D.

Oct. 2, 1979.

John L. Wilson, Kenneth L. Jost, U. S. Dept. of Justice, Antitrust Division, Washington, D. C., for plaintiff.

Sydney Berde, St. Paul, Minn., for defendant.

Carlyle C. Ring, Kaler, Worsley, Daniel & Hollman, Washington, D. C., for Vanguard.

## MEMORANDUM AND ORDERS RULING ALL PENDING MATTERS BEFORE THE COURT

### I.

JOHN W. OLIVER, Chief Judge.

A Final Judgment was entered in this case on April 30, 1975. A copy was attached as Appendix B to this Court's approval opinion reported as *United States v. Associated Milk Producers, Inc.*, (W.D.Mo. 1975) 394 F.Supp. 29, at 49. A Supplemental Order entered the same day, establishing enforcement and modification procedures in regard to that Final Judgment, was attached as Appendix C to that opinion. See 394 F.Supp. at 56.

Various motions filed and letter requests made by Vanguard Milk Producers Co-op of Missouri (hereinafter "Vanguard") in the wake of the commencement of a contempt proceeding by the government against Associated Milk Producers, Inc. (hereinafter "AMPI") requires that we make a detailed statement of the present procedural posture of the case in order that the questions presented by the various filings may be understood.

Briefly stated, those questions relate to whether the contempt petition filed by the government has been mooted and should therefore be dismissed; or whether, as Vanguard contends, this Court should exercise independent enforcement power and jurisdiction pursuant to the procedures provided in the Supplemental Order of April 30, 1975.

We shall find and conclude that the government's contempt petition was mooted by actions which AMPI agreed to take after the issuance of this Court's order to show cause why the relief prayed for in that petition should not be granted. It is appropriate, however, that we discuss the questions presented in regard to the Supplemental Order in light of the fact that, although the procedures provided in that order have been utilized by interested persons on several occasions since it was entered on April 30, 1975, this is the first time that this Court has been requested to take any action pursuant to the procedures established in that order.

### II.

#### (a) *Government's Contempt Proceeding*

On April 19, 1979 the government filed a petition for an order to show cause why AMPI should not be held in civil contempt of this Court's Final Judgment entered April 30, 1975. That petition alleged that AMPI had violated and was continuing to violate Section IV(1) [394 F.Supp. at 51] of the Final Judgment which generally enjoined AMPI from discriminating or threatening to discriminate against any processor who purchases or proposes to purchase milk from any person other than AMPI for any or all of the processor's plants.

The broad language of Section IV(1) was subject to a proviso that AMPI could charge processors different prices for milk based on different methods of handling or delivering milk if the differences in price were reasonably related to AMPI's cost and if the differences in price were not charged for the purpose of inducing any processor to cease, limit, or reduce, or not to make purchases from non-member-producers. The proviso also permitted AMPI to charge dif-

ferent prices for milk if the different prices were based on the use of the milk or were established to meet a lower price of a competitor of AMPI.

Paragraph 6 of the government's petition focused on an August 2, 1978 announcement which AMPI sent to processors in its Southern Region which established a two-tier pricing structure for milk sold between September 1, 1978 and March 31, 1979. The establishment of a "base commitment" and how it was to be applied is detailed in paragraphs 7 and 8 of the government's petition.

Paragraph 10 of the government's petition focused on a second announcement AMPI sent to processors on or about March 9, 1979, which allegedly continued a two-tier pricing structure for milk sold after April 1, 1979. Paragraph 13 of the government's petition alleged that AMPI engaged in a separate threat to discriminate and actual discrimination in regard to separate prices charged for a processor's cream. The government's petition prayed for a show cause order, an ultimate adjudication of civil contempt, and for other relief which might be deemed appropriate.

This Court entered an order on April 19, 1979, which directed that AMPI show cause on or before May 7, 1979 why it should not be adjudged in civil contempt and why appropriate relief should not be ordered. AMPI filed its response to that order on May 4, 1979. That response stated that counsel for AMPI and representatives of its marketing department had conferred with government counsel on May 1, 1979 to explore methods of resolving the issues presented by the government's contempt petition. AMPI attached two exhibits to its response: a draft notice which it agreed to publish and an April 26, 1979 announcement. AMPI stated that its publication of the notice and announcement were designed to meet the government's objections to AMPI's pricing practices as described in paragraphs 6, 10 and 13 of the government's petition.

AMPI's response further stated that AMPI's counsel had been advised by government counsel on May 2, 1979 that AMPI's April 26, 1979 announcement relating both to its terms of purchase of surplus cream and the proposed notice relating to its terms of sale of milk to Southern Region handlers commencing April, 1979 were acceptable to the government and not in violation of the terms of the April 30, 1975 Final Judgment. After reciting that the announcements would be promptly distributed to all Southern Region handlers, AMPI prayed that the government's petition be dismissed as moot.

On May 29, 1979, the government filed a lengthy memorandum regarding the mootness of its April 19, 1979 petition. A copy of a letter counsel for Vanguard wrote the Antitrust Division on May 7, 1979 and a copy of a letter Vanguard's counsel wrote this Court on the same date were attached to that memorandum as Exhibits D and E, respectively, and explain the length of the government's memorandum. A substantial portion of the government's lengthy memorandum regarding the mootness of its contempt petition was devoted to a careful, item by item, response to each of the five concerns stated in Vanguard's May 7, 1979 letter to the Antitrust Division. The government's memorandum on mootness also shows that counsel for the Antitrust Division, both before and after the filing of the government's contempt petition, conferred with counsel for Vanguard and discussed the possibility that AMPI might elect to employ a pricing system similar to that which was eventually employed in AMPI's May 2, 1979 announcement.

Thus, for reasons which are stated in detail in the government's mootness memorandum, counsel for the Antitrust Division concluded and thereafter advised the Court that the government's goal in mounting its challenge to AMPI's alleged discriminations had been accomplished; that should AMPI again attempt to violate the Final Judgment, prompt and appropriate action would be taken by the Antitrust Division at that time; and that for the reason the contempt petition had served its purpose, it should now be dismissed as moot.

### (b) *Vanguard's Motions and Requests for Relief*

On June 21, 1979, Vanguard filed what it described as a "Motion for leave to file written suggestions for further enforcement of the Final Judgment of April 30, 1975." In its suggestions in support of that motion Vanguard stated that it had complied with the procedures provided in this Court's Supplemental Order of April 30, 1975 and detailed the circumstances under which Vanguard had directed the Antitrust Division's attention to Vanguard's request that the government institute enforcement proceedings against AMPI in regard to the Final Judgment.

Vanguard's suggestions recited that the Chicago Office of the Antitrust Division had taken a request made by Vanguard for enforcement of the Final Judgment under advisement shortly after that request had been made and that consideration of that request had gone forward "continuously since May 8, 1978." Vanguard stated that consideration of Vanguard's May 8, 1978 request by the Chicago Office of the Antitrust Division was transferred to the Antitrust Division's Washington office after AMPI had issued its August 2, 1978 notice. Vanguard then stated that after the Washington office of the Antitrust Division completed its consideration of Vanguard's May 8, 1978 request, it filed the pending contempt petition on April 19, 1979.

Vanguard's suggestions reflected that Vanguard was not and is not in agreement with the government's position that the contempt petition was mooted and that, upon leave of Court being granted, Vanguard would file written suggestions in support of Vanguard's position that "the Court should exercise its independent power and jurisdiction to take further enforcement action on its own motion."

On June 27, 1979, and before the Court had an opportunity to rule Vanguard's initial motion filed June 21, 1979, Vanguard's counsel forwarded a document entitled "Application for this Court to exercise its independent power and jurisdiction to enforce the Final Judgment of April 30, 1975 with written suggestions for further enforcement on this Court's own motion." Vanguard's letter of transmittal in which that document was forwarded to the Court stated that "If leave is granted by the Court, we would ask that the enclosed Application be filed by the Court."

Although leave of court to file that application has not and will not be granted, we have read and given appropriate consideration to the substance of the claims and contentions which Vanguard made in its application. That application stated Vanguard's view that the "United States' offer to moot the petition for enforcement is a 'reprieve'—on top of a 'consent' judgment" and that, in effect, "the Government's offer to moot the petition gives AMPI a 'third' chance without determination of the legality of the notices, a promise by AMPI to refrain from future use of the same pricing policy, nor compensation for the damage done." The tendered application made clear that "Vanguard herein requests the Court to act on its own motion, to require, among other things, compensation for the damages done by AMPI's violation of the Consent Judgment."

Vanguard's application was written in direct response and keyed to the government's May 29, 1979 memorandum regarding the mooting of its petition. Indeed, although phrased in a little different language, the complaints which Vanguard stated in its May 7, 1979 letter to the Antitrust Division (Exhibit D attached to the government's May 29, 1979 memorandum) were reiterated in detail as reasons why this Court should exercise its independent power and jurisdiction. In addition, Vanguard's application responded directly to the legal contentions and authorities cited and relied upon by the government in its May 29, 1979 mootness memorandum. Vanguard also cited the cases upon which it relied to sustain its legal arguments. It is therefore apparent that the government and Vanguard fully utilized the opportunity afforded each to brief the questions presented by Vanguard. The Court has had the benefit of the carefully presented views

of counsel and has considered the merits of Vanguard's claims and legal contentions.

In addition, the record shows that on July 26, 1979 AMPI filed its suggestions in opposition to Vanguard's June 21, 1979 motion. AMPI's suggestions and the over twenty exhibits attached thereto were also directed and keyed to Vanguard's application tendered in its June 27, 1979 letter to the Court. AMPI's suggestions in opposition and the exhibits attached thereto clearly reflect that Vanguard's interest in the manner in which the Antitrust Division was monitoring AMPI's compliance with the April 30, 1975 Final Judgment commenced with the request Vanguard made on May 8, 1978 in regard to the alleged anti-competitive effect of AMPI's September, 1977 milk supply contract. See Exhibit E attached to AMPI's suggestions.

This Court was advised of that request shortly after it was made and followed the manner in which that request was processed with considerable interest.

The files and records in this proceeding accurately reflect the manner in which Vanguard's May 8, 1978 request was processed in accordance with the procedures established by the Supplemental Order. The Chicago office of the Antitrust Division advised this Court in a letter dated May 16, 1978, a copy of which was sent Vanguard's counsel, that Vanguard had submitted a request for enforcement on May 8, 1978 in accordance with the procedures provided in this Court's Supplemental Order of April 30, 1975. The Court was advised by the Antitrust Division that it would respond in accordance with the applicable provision of the Supplemental Order. See Exhibit I attached to AMPI's suggestions.

This Court was thereafter advised by the Antitrust Division on July 10, 1978, a copy of that letter being forwarded to Vanguard's counsel, that it had completed its investigation of the 1977 AMPI milk supply contract and that it had decided that it would not take any further action. The reasons for the Antitrust Division's decision were fully stated in its July 10, 1978 letter to this Court and attached underlying data which reflected the basis on which it had exercised its judgment. See Exhibit M attached to AMPI's suggestions. The specific controversy concerning AMPI's 1977 milk supply contracts was thus terminated. Vanguard filed no objections nor did it indicate that the government's rejection of its May 8, 1978 request relating to the 1977 milk supply contracts was in any way improper or inappropriate.

AMPI's suggestions in opposition present the question of whether Vanguard's pending request for leave to file its application for enforcement is in any way based upon the Antitrust Division's rejection of its May 8, 1978 request. AMPI argues that Vanguard's recent request made directly to the Court simply reflects Vanguard's disagreement with the government's decision that its contempt petition had been mooted, an entirely different matter than that about which Vanguard requested Antitrust Division action back in May of 1978.

AMPI's suggestions therefore present the question of whether, in connection with the matters which constituted the subject matter of the government's April 19, 1979 contempt petition, Vanguard has actually tendered for filing an "appropriate petition of enforcement" and an "appropriate written memorandum," and the other papers required by this Court's Supplemental Order of April 30, 1975. AMPI contends that under the circumstances Vanguard's pending motions and requests may not properly be considered as within the framework of the procedures established by the Supplemental Order and that all of Vanguard's pending motions and requests should be denied on procedural grounds.

Vanguard filed a reply to AMPI's suggestions in opposition on August 6, 1979. That reply asserted that Vanguard has complied with the procedural requirements of the Supplemental Order; denied that its present motion should be considered as the functional equivalent of a motion to intervene, as AMPI had suggested; and argued that the Court should now determine whether Vanguard's tendered application sets forth substantive grounds for the Court

to consider independent enforcement of the Final Judgment. Vanguard's reply also directed attention to a letter written by the Antitrust Division to Vanguard's counsel on June 15, 1979, a copy of which was forwarded to this Court, which concluded with the statement that "the Government would not oppose an attempt by Vanguard to invoke Section II(H) of the Supplemental Order on the ground that Vanguard had not requested enforcement of the Judgment under that Order." The government, however, made clear that it would stand by its earlier stated position that "the pending litigation should be dismissed as moot, and that no further proceedings are necessary which involve the Government in litigation concerning AMPI's now abandoned terms of sale." See Exhibit F attached to Vanguard's affidavit attached to Vanguard's reply suggestions.

On August 16, 1979 AMPI countered Vanguard's numerous filings with a formal motion to dismiss the government's April 19, 1979 contempt petition as moot. Vanguard filed suggestions in opposition to AMPI's August 16, 1979 motion to dismiss on August 27, 1979. Other than suggesting that AMPI's motion to dismiss was premature, Vanguard conceded, as did AMPI in its suggestions in support of its motion to dismiss, that the arguments made in support and in opposition to AMPI's motion to dismiss were no more than a reiteration of arguments and a recitation of legal authorities which AMPI and Vanguard had previously called to the Court's attention in earlier filings. Vanguard, of course, concluded its last filing with a reiterated request that "the Court grant leave to file Vanguard's application and act favorably upon the application itself."

(c) *Summary of all Pending Motions and Requests for Judicial Action*

The formal prayers for judicial relief and requests for judicial action contained in the various and voluminous filings which we have just summarized may be further compressed as follows:

(1) AMPI's May 4, 1979 response to this Court's April 19, 1979 order to show cause prayed that the government's contempt petition be dismissed as moot.

(2) The government's May 29, 1979 mootness memorandum stated the government's considered judgment that its contempt petition had served its purpose and agreed with AMPI's prayer that such petition should be dismissed as moot.

(3) Vanguard's July 21, 1979 motion entitled "Motion for leave to file written suggestions for further enforcement of the Final Judgment of April 30, 1975" reflected Vanguard's disagreement with the Antitrust Division's judgment that the government's contempt petition should be dismissed as moot.

(4) Vanguard's June 27, 1979 letter requested that leave of Court be granted Vanguard to file its tendered document entitled "Application for this Court to exercise its independent power and jurisdiction to enforce the Final Judgment of April 30, 1975 with written suggestions for further enforcement on the Court's own motion." That letter and the tendered application set forth in full detail the reasons why Vanguard disagrees with the Antitrust Divisions' position as stated in its mootness memorandum and why Vanguard believes that this Court should act on its own motion.

(5) AMPI's August 16, 1979 motion to dismiss as moot the government's contempt petition was apparently filed for the purpose of presenting, in the form of a formal motion, a procedural situation under which the government's position on mootness, as stated in its May 29, 1979 mootness memorandum, could be definitively ruled.

The filings which we have summarized and compressed clearly reflect the positions of the parties to this case and Vanguard's disagreement with the government's and AMPI's position. The government, for reasons adequately stated in detail, definitely states it is satisfied that the goal which the government sought in filing its contempt petition was achieved and that its contempt petition should be dismissed as moot. AMPI, of course, agrees with the government's position.

Vanguard, on the other hand, has filed all sorts of motions and letter requests in purported compliance with the procedures provided in this Court's Supplemental Order which actually seek relief neither contemplated nor provided for in that Supplemental Order.

An order dismissing the government's contempt petition as moot, together with other orders designed to untangle the procedural situation created by Vanguard's various filings and letter requests will be entered for the reasons stated in the next part of this memorandum opinion.

### III.

#### (a) *Background of Supplemental Order of April 30, 1975*

Our opinion approving the consent decree involved in this case, reported in 394 F.Supp. 29, reflected this Court's concern in regard to the procedures then being followed by the Antitrust Division in regard to the manner it presented consent decrees to district courts for approval. That opinion outlined the procedures ordered by this Court before it would even consider whether the proposed consent decree would be approved. Those procedures were ordered both before and after the enactment on December 17, 1974 of the Antitrust Procedures and Penalties Act. See 394 F.Supp. at 32 to 40, inclusive.

In Part VII of that opinion, 394 F.Supp. at 46, we stated this Court's additional concern as it related to the problem of enforcement of antitrust consent decrees. We there noted that although between 70% and 80% of all civil antitrust cases filed by the Department of Justice are terminated by consent decrees, very little legislative or judicial attention had ever been focused on the question of whether and how consent decrees have been enforced. In footnote 16 of that opinion we directed attention to academic studies which suggested that the Antitrust Division "practically never initiates contempt proceedings" and that it had made only a "total of forty-two attempts to punish decree violations through contempt proceedings . . . in approximately

eighty years." It was further reported that the government had not been spectacularly successful in those few attempts; it was reported to have been successful in only approximately half of the cases in which it even attempted to enforce consent decrees.

The transcripts of the proceedings held in this case in September and November, 1974, to which we made reference in our approval opinion, 394 F.Supp. at 46, show that this Court recited in detail the experience it had in processing various contempt proceedings in the past and the difficulties it had encountered in connection with those cases. We further stated that "many persons who may be affected by a consent decree simply do not possess and are not furnished any information in regard to the manner in which alleged violations of a final judgment entered upon a proposed consent decree are to be brought before the Court for appropriate judicial enforcement proceedings." (*id.* at 46)

We also stated that we believed that the procedures under which a consent antitrust decree might be more effectively enforced could be improved by appropriate judicial, rather than legislative, action. We added that:

The Supplemental Order establishing enforcement and modification procedures is entered with the hope that public information concerning a clear definition of applicable and available procedures for enforcement and modification of the final judgment entered in this case will improve the administration of justice in regard to the enforcement of the final judgments obtained by way of consent decrees. (*Id.* at 46).

The procedures set forth in the Supplemental Order to implement the hope expressed must be read in light of what we had earlier said in our opinion approving the Final Judgment. We there stated that:

Courts have long had power, however, as the procedures directed in this case demonstrate, to devise and direct appropriate procedures to enable the Department of Justice and the court to have the

benefit of the views of third parties. Courts which accept Brandeis' idea that '[s]unlight is said to be the best of disinfectants,' Brandeis *Other People's Money,* 92 (1914 ed.), have exercised that power under the circumstances of a particular case. That objective may be effectively attained by procedures which do not include the complications which may result from the granting of a formal motion to intervene as a party. [*Id.* at 42–43]

The Supplemental Order of April 30, 1975 was divided into two parts. Part I covered the procedures to be followed "where enforcement is sought by the United States." The government was required "to proceed in accordance with law as provided in Rule 42(b) of the Rules of Criminal Procedure." Adoption of the procedural requirements of Rule 42(b) did not suggest, much less direct or require, that the government always elect to seek a criminal rather than a civil sanction.

The procedures provided in Rule 42(b) were adopted in Part I in order to insure that the contempt enforcement proceeding, regardless of what type sanction the government might seek, civil or criminal (see *Shillitani v. United States,* 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966), and *Cheff v. Schnackenberg,* 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966)), would be commenced by an appropriate notice which would state the essential facts constituting the alleged contempt and afford the defendant a reasonable period of time for the preparation of the defense.

The procedures provided in Rule 42(b) were adopted for the additional purpose of avoiding the difficulties needlessly injected into a contempt proceeding as illustrated by the circumstances of *United States v. Prugh,* 479 F.2d 611 (8 Cir. 1973), a case this Court had processed in the then recent past. In that case counsel for the Securities and Exchange Commission initially attempted to commence its contempt proceeding for enforcement of a consent decree by filing an information which alleged a violation of 18 U.S.C. § 401, a statute of the United States which carries no penalty whatsoever.

The procedures which SEC counsel initially attempted to follow in *Prugh* reflect but a part of the adverse experience this Court has had over the years in connection with both civil and criminal contempt proceedings instituted by various agencies of the United States which terminate a substantial portion of their litigation by consent decree.

Under the undisputed factual circumstances of this case, it is clear that the government did, within the meaning of Part I of the Supplemental Order, in fact "determine that defendant is not complying with . . . the Final Judgment." The government accordingly filed its petition for an order to show cause why AMPI should not be found in civil contempt. This Court entered an order to show cause in a form which required only slight modification of the form of order proposed by the government. The issuance of that order to show cause prompted a conference between counsel for the parties with the result that AMPI was able to state in its response that it had and would take action which would moot the contempt petition.

When the Court reviewed the government's May 29, 1979 mootness memorandum which confirmed the factual recitations stated in AMPI's response; affirmatively stated that the government had achieved the goal it sought in instituting this case; and joined AMPI in its request that the contempt petition be dismissed as moot, this case was ripe for an order of dismissal.

Such an order was not entered at that time, however, because the Court had been advised by a letter from Vanguard's counsel on May 7, 1979 that Vanguard read subsection H of Part II of the Supplemental Order as providing a vehicle for an "aggrieved person [who] believes any action taken by the Department is not appropriate, [to] advise the Court and suggest to the Court that further independent action be taken by the Court." See Exhibit E attached to the government's May 29, 1979 mootness memorandum.

(b) *Purpose of Part II of Supplemental Order*

Part II of the Supplemental Order was designed to provide procedures to cover the situation in which the United States had refused a request of an allegedly aggrieved person and had not sought enforcement of the Final Judgment. Part II was not promulgated to establish some sort of *ad hoc* procedure for this Court to exercise appellate review over the Antitrust Division's appropriate exercise of discretion in regard to the termination of contempt proceedings which it might institute to enforce the Final Judgment. Subsection A of Part II required that an allegedly aggrieved person take a number of detailed procedural steps "before making or filing any application for this Court to exercise its independent power and jurisdiction to enforce the Final Judgment on its own motion." Subsection C of Part II provided that an allegedly aggrieved person prepare and submit to the Antitrust Division "a copy of a petition of enforcement which the allegedly aggrieved person believes should be filed by the United States."

The other carefully detailed steps in Part II were designed to permit an allegedly aggrieved person to get the attention of the Antitrust Division in an orderly manner and, thereafter, to afford the United States the fullest sort of opportunity to make a considered judgment as to whether a carefully drawn enforcement petition proposed and submitted by such a person should be filed by the United States. Vanguard demonstrated that it understood what steps were required under Part II of the Supplemental Order when it presented its May 8, 1978 request to the Antitrust Division for it to seek enforcement of the Final Judgment in connection with AMPI's 1977 committed supply contracts. See Exhibits E, F, and G, attached to AMPI's July 26, 1979 suggestions in opposition to Vanguard's June 21, 1979 motion for leave to file application for enforcement.

The Court is confident that no one will be surprised by the Court's statement that when it drafted the Supplemental Order of April 30, 1975, it did not have in mind and therefore did not attempt to cover the procedural situation presently presented under the circumstances of this case. We do not deem it either necessary or appropriate, however, to rule the questions presently presented to the Court on procedural grounds. We believe that the Court should reach the merits of the substantive claims presented by Vanguard's filings in accordance with the rationale applied when we considered whether the Final Judgment proposed by the parties should be approved.

(c) *Consideration of Vanguard's Tendered Application Shall Not Have Any Precedential Value*

While we have concluded that we should consider the merits of Vanguard's claims as set forth in its tendered application, other filings, and the exhibits attached thereto, it is appropriate that we state that such action shall not be considered as a precedent for like consideration in future cases which may involve the procedures established by the Supplemental Order.

Vanguard's position in regard to its alleged compliance with the procedural requirements of the Supplemental Order is most fully stated in its August 6, 1979 suggestions in reply to AMPI's suggestions in opposition to Vanguard's motion to file an application for enforcement of the Final Judgment. Vanguard's reply emphasized that the government has "indicated to the Court that Vanguard has complied with the procedural requirements of the Supplemental Order." That reply argued that under the circumstances which followed the Antitrust Division's rejection of its May 8, 1978 request, it seemed "unnecessary and inappropriate" to Vanguard for it to have made a "repetitive request" after it had once submitted its May 8, 1978 request in accordance with the Supplemental Order.

Vanguard cited and relied upon *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967), to sustain its argument that, on occasion, "the public interest may require action beyond that negotiated by the defendant and the Department of Justice."

Vanguard contended in its reply that in this case "it is possible that upon review of the application on its merits, the public interest, subjected to the sunshine of advocacy of all those directly affected, will result in the Court determining that the public interest requires something more than what has already been done."

The affidavit of Vanguard's counsel attached to Vanguard's reply set forth in detail the numerous meetings, extended telephone conversations and letters which Vanguard's counsel had with representatives of the Antitrust Division Offices in Chicago and in Washington after it had filed its May 8, 1978 request. In that affidavit Vanguard's counsel stated *his* interpretation of the Antitrust Division's July 10, 1978 report to this Court in regard to Vanguard's May 8, 1978 request. He made reference to *his* conclusion that the Department of Justice had encouraged letters of protest against AMPI's August 2, 1978 pricing notice from other persons who were not parties to the case. He stated *his* conclusion as to why "it did not seem timely to file an application for independent enforcement [in late August or early September, 1978] with the Court," long after the government had, consistent with the procedures provided in the Supplemental Order, reported to this Court that it had decided not to take any action on Vanguard's May 8, 1978 request.

While we have concluded that we should reach the merits of Vanguard's claims under the circumstances of this case, it is appropriate to state that, except in the instance of Vanguard's filing of its May 8, 1978 request, Vanguard did not comply with either the letter or spirit of the procedures provided in the Supplemental Order in connection with the claims which it now seeks to present in its tendered application and other filings.

One of the principal reasons the Supplemental Order was entered on April 30, 1975 was to establish an orderly procedure, known to the public, under which an allegedly aggrieved person would be able to present a request for specific remedial action for appropriate consideration by the Antitrust Division and thus avoid the confusion produced by the real possibility of lack of communication between such a person and the Antitrust Division. Experience teaches that such confusion frequently results from extended telephone conversations, conversations and conferences with Antitrust Division staff which are not focused on a carefully drawn "petition for enforcement which the allegedly aggrieved person believes should be filed by the United States," as provided in Subsection C of Part II of the Supplemental Order.

There is no valid reason why Vanguard, as an allegedly aggrieved person, could not have filed supplemental requests for enforcement, properly supported by new affidavits, after its May 8, 1978 request had been rejected by the Antitrust Division for the reasons it stated in its July 10, 1978 report to this Court. Such supplemental requests could have incorporated particular portions of the earlier request by reference and could have attached new affidavits and a new form of a petition for enforcement which it believed the United States should file under the new circumstances.

In all future cases, if any there may be, the Court will give appropriate consideration to a motion to dismiss a Part II enforcement proceeding on the ground that an allegedly aggrieved person may have failed to follow and adequately comply with the procedures provided in Part II of the Supplemental Order. We are persuaded that we should consider the merits of Vanguard's presently asserted claims for the primary reason that Vanguard is the first allegedly aggrieved person to seek what it believed to be appropriate judicial relief under the procedures established by the Supplemental Order. Future persons who may assert that they are aggrieved by a decision of the Antitrust Division will have the benefit of the gloss placed on the Supplemental Order by this memorandum opinion.

(d) *Consideration of the Merits of the Questions Presented by Vanguard*

The questions presented by Vanguard's current filings present questions which are

quite similar in substance to the various questions that were presented in the 1974–1975 approval proceeding by the motions to intervene and the requests filed and made by persons who were not parties to this case. Those persons contended that they should be permitted to intervene as parties and that this Court should conduct a plenary evidentiary hearing before it considered whether the proposed consent decree should be approved. All those filings in the approval proceedings were made for the purpose of having this Court review and override the government's exercise of discretion in regard to what ultimate relief should be included in the consent decree then proposed for approval.

In ruling the questions presented in the course of the approval proceedings, we concluded that the applicable standard of judicial review required that we decline any and all invitations to assess the wisdom of the government's judgment in its negotiation of the consent decree "in the absence of any claim of bad faith or malfeasance on the part of the Government in so acting," as stated in *Sam Fox Publication Co. v. United States*, 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961). [394 F.Supp. 41].

The Court of Appeals concluded that our decision to apply the *Sam Fox* dictum was correct. The Supreme Court denied *certiorari*, 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1977). The Court of Appeals, in agreement with this Court, refused to give a broad reading to *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967), and held that:

> It is axiomatic that the Attorney General must retain considerable discretion in controlling government litigation and in determining what is in the public interest. Thus, in our view, the intervention standard remains that which was stated in *Sam Fox*: "[B]ad faith or malfeasance on the part of the Government" in negotiating and accepting a consent decree must be shown before intervention will be allowed. [534 F.2d 113, 117]

We denied intervention in the approval proceeding and refused to conduct any further evidentiary hearing for the reason that we were satisfied that the procedures which we had directed in connection with that proceeding had afforded all interested parties an appropriate opportunity to state and to have their views given appropriate consideration on the merits, both by the Antitrust Division and by this Court. We held that:

> Because we are convinced that all interested persons have been afforded every right to fully and fairly state their views and comments which formal intervention would have granted, and because we are convinced that the granting of the motions to intervene would not serve any appropriate purpose under the circumstances, we find and conclude that all pending motions to intervene should, in the exercise of our discretion, be denied. [394 F.Supp. at 44]

Vanguard's attempt to utilize the procedures provided in Part II of the Supplemental Order under the procedural circumstances of this case and the government's full and direct response to all of Vanguard's claims and contentions, wherever voiced, when considered in light of the briefs filed and the numerous exhibits attached to the various filings in this case, afford this Court a more than ample basis for our finding and conclusion that Vanguard in this proceeding, as was true in the approval proceedings, has been "afforded every right to fully and fairly state their views and comments which formal intervention would have granted." 394 F.Supp. at 44.

In this proceeding, as in the approval proceeding, there was no claim of bad faith or malfeasance on the part of the government. The files and records in this case, as in the approval proceeding, show that "[t]he filings of the government establish that it has given appropriate consideration to [Vanguard's] comments and has stated the reasons why [they] were rejected." 394 F.Supp. at 43. In short, we can say in this proceeding, as we said in the approval proceeding that:

682

We are satisfied that the government actually considered and evaluated all of the various alternatives which the various persons have suggested and, in connection with most, ruled out the various alternatives recommended by third persons . . . for reasons which have been adequately stated and explained. [Id. at 45].

We therefore find and conclude that this case was mooted by the government's decision and reasonable determination that it had attained the goal which it sought by its institution of the contempt proceeding; that the judgment made by the Antitrust Division in that regard was well within the discretion vested in it and the Attorney General; and that there is no occasion for this Court to grant Vanguard's various motions and requests or to consider the matter further on its own motion in light of the fact that there is no claim of any sort of bad faith or malfeasance on the part of the government in its determination that this case has been mooted. It follows that the government's contempt petition should be dismissed as moot.

For the reasons stated, it is

ORDERED (1) that the petition by the United States for an order to show cause why respondent should not be found in civil contempt, filed April 19, 1979, should be and the same is hereby dismissed as moot. It is further

ORDERED (2) that Vanguard's July 21, 1979 motion entitled "Motion for leave to file written suggestions for further enforcement of the Final Judgment of April 30, 1975" should be and the same is hereby denied. It is further

ORDERED (3) that Vanguard's request of the Court in its June 27, 1979 letter that leave be granted to file Vanguard's tendered document entitled "Application for this Court to exercise its independent power and jurisdiction to enforce the Final Judgment of April 30, 1975, with written suggestions for further enforcement on the Court's own motion" should be and the same is hereby denied. The application transmitted in that letter should, however,

be stamped by the Clerk's office as "RECEIVED" rather than "FILED" in order that the document will be a part of the files and records of the Court so that it may be included therein for purposes of any appropriate appellate review. It is further

ORDERED (4) that AMPI's August 16, 1979 motion to dismiss as moot the government's April 19, 1979 contempt petition should be and the same is hereby denied, the same having been mooted by Order (1) as above stated.