**UNITED STATES of America,**
**Appellant,**

v.

**J. B. KRAMER GROCERY CO., Inc., and**
**James B. Kramer, Appellees.**

**No. 19665.**

United States Court of Appeals
Eighth Circuit.

Nov. 28, 1969.

John L. Murphy, Acting Chief, Administrative Regulations Section, Criminal Division, Dept. of Justice, Washington, D. C., for appellant; Wilbur H. Dillahunty, U. S. Atty., Little Rock, Ark., James R. Rhodes, Asst. U. S. Atty., Little Rock, Ark., William W. Goodrich, Asst. Gen. Counsel, Dept. of Health, Education, and Welfare, Washington, D. C., and Eugene M. Pfeifer, Atty., Washington, D. C., on the brief.

H. David Blair, of Murphy, Arnold & Blair, Batesville, Ark., for appellees.

Before MEHAFFY, GIBSON and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

We are asked on this appeal to determine whether the trial court properly suppressed evidence seized by an inspector of the Food and Drug Administration during a warrantless inspection of a commercial warehouse owned by J. B. Kramer Grocery Company, Inc. The suppression was sustained on the grounds that: (1) FDA no longer has the right to conduct warrantless inspections of commercial premises unless the inspection has been consented to,[1] Camara v. Municipal Court, 387 U.S. 523,

---

1. A brief review of the FDA inspection procedures may be helpful here. Section 704(a) of the Food, Drug and Cosmetic Act, 21 U.S.C. § 374(a), permits a warrantless inspection of business premises by FDA inspectors:

"For purposes of enforcement of this chapter, officers or employees duly designated by the Secretary, upon pre-

senting appropriate credentials and a written notice to the owner, operator, or agent in charge, are authorized (1) to enter, at reasonable times, any factory, warehouse, or establishment in which food, drugs, devices, or cosmetics are manufactured, processed, packed, or held, for introduction into interstate commerce or are held after such intro-

87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967),[2] and (2) a valid consent was not given here. United States v. J. B. Kramer Grocery Co., 294 F.Supp. 65 (E.D.Ark.1969).

The trial court carefully limited its decision to the particular facts of this case stating:

"[The court] is not holding that warrantless inspections of business premises by inspectors of FDA are unconstitutional per se; such inspections would appear to be perfectly valid assuming actual voluntary consent. Nor is the court holding that FDA inspectors are necessarily required affirmatively to advise the owners or custodians of premises to be inspected that they are not required to submit to inspections without warrants. What the court holds is simply this:

duction, or to enter any vehicle being used to transport or hold such food, drugs, devices, or cosmetics in interstate commerce; and (2) to inspect, at reasonable times and within reasonable limits and in a reasonable manner, such factory, warehouse, establishment, or vehicle and all pertinent equipment, finished and unfinished materials, containers, and labeling therein. * * * A separate notice shall be given for each such inspection, but a notice shall not be required for each entry made during the period covered by the inspection. Each such inspection shall be commenced and completed with reasonable promptness."
Section 301(f) of the Act, 21 U.S.C. § 331(f), makes refusal to permit an inspection a criminal offense:
"The following acts and the causing thereof are prohibited:
    *    *    *    *    *
"(f) The refusal to permit entry or inspection as authorized by section 374 of this title."
The penalty for refusal to permit the search is the same as that prescribed for a violation of the Act's substantive requirements with regard to the condition and contents of the inspected premises.
The constitutionality of such provisions was established in Frank v. Maryland, 359 U.S. 360, 79 S.Ct. 804, 3 L.Ed.2d 877 (1959), in which the Supreme Court

that in the circumstances shown by the evidence in this case, James B. Kramer did not effectively waive by consent the protection of his business premises afforded by the Fourth Amendment, and that the August 19, 1967, inspection of those premises was unlawful."

The government argues on appeal that Kramer consented to the inspection by failing to object to it and by cooperating with the inspector. The government also argues that the practical effect of an affirmance here would be to require the FDA to adopt a policy of advising owners of commercial premises that they have a right to refuse inspection unless the inspectors have a warrant authorizing inspection.

At the outset, we affirm the holding of the trial court that consent is ordinarily required in warrantless searches of commercial premises by inspectors of FDA.[3] *Camara* and *See* re-

upheld the conviction of a person who had refused to permit a warrantless inspection. Eight years later, however, the Supreme Court reversed itself by holding that an inspector, who is refused entry by the owner or occupant of the premises, may compel entry only through the warrant procedure. Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727 (1967); See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1737 (1967).

2.  The applicability of See v. City of Seattle, *supra*, to inspections by the FDA is conceded here. *See* specifically held:
"* * * [A]dministrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure."
*Id.* at 545, 87 S.Ct. at 1740.

3.  The Supreme Court stated that the warrant procedure was unnecessary in two carefully defined classes of cases: (1) Prompt inspections without a warrant are permissible in *emergency* situations, Camara v. Municipal Court, *supra*, 387 U.S. at 539, 87 S.Ct. 1727. (2) Regulatory inspections pursuant to accepted *licensing programs* are permissible without a warrant, See v. City of Seattle, *supra* 387 U.S. at 546, 87 S.Ct. 1737.

quire this result. United States v. Stanack Sales Co., 387 F.2d 849 (3rd Cir. 1968).

■ Whether consent has been given is a question of fact for the trial court to determine, subject to appellate review within the clearly erroneous rule. Wren v. United States, 352 F.2d 617 (10th Cir. 1965), cert. denied, 384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 542 (1966); Simmons v. Bomar, 349 F.2d 365 (6th Cir. 1965).

■ We cannot say here that the trial court erred in finding that consent had not been given. There is evidence to support the trial court's view that the inspector asserted that he had authority to inspect and insisted on his right to do so. Furthermore, there is evidence indicating that the inspector believed he had the right to inspect without a warrant and that Kramer believed he would violate the law if he refused to permit the inspection.[4]

Kramer testified: (1) that the inspector sent Kramer's secretary into the warehouse after Kramer "six or seven times" when it was apparent to the inspector that Kramer did not wish the warehouse to be inspected; (2) that the inspector insisted upon the right of inspection, stating he had a perfect right to inspect the warehouse any time and stating that Kramer "couldn't do anything about it"; and (3) that the inspector "demanded" records and information and said that "the law required it." Lack of consent can also be found from the inspector's testimony. When asked whether he had misled, harassed or intimidated Kramer, the inspector replied that "it would have to be a matter of interpretation." In clarification of this statement, the inspector admitted to the court that he had accused Kramer of "playing a delaying game," and that he had made out a Notice of Inspection to Kramer's secretary while Kramer was out of the office, a practice never used when the owner is on the premises.

We do not believe it necessary to speculate as to whether this decision, when considered with Camara and See, will require the FDA to adopt a policy of informing owners of commercial properties that they have a right to refuse warrantless inspections.[5] We simply affirm the decision of the trial court on the grounds that under the circumstances of this case, Kramer did not consent to the inspection.

Judgment affirmed.

---

4. It is unnecessary for us to decide in this opinion whether coercion is implicit in every situation where acquiescence to inspection is obtained under color of law. The Fifth Circuit answered this question in the negative in United States v. Hammond Milling Co., 413 F.2d 608 (5th Cir. 1969). There, however, the inspectors: " * * * did not ask permission, refer to their legal authority to inspect, mention any penalties for failure to allow inspection, raise their voices, restrict his freedom, or threaten in any way; nor did they tell him that he had the right to refuse entry or to have counsel. Their interchanges with him were entirely amicable."

*Id.* at 610. See also, United States v. Sessions, 283 F.Supp. 746 (N.D.Ga.1968). Here, the inspector clearly did more than merely present his credentials and Notice of Inspection.

5. The Internal Revenue Service has adopted a procedure for advising taxpayers of their rights during investigations conducted by Special Agents of that Service, I.R.S. News Release IR–949, November 26, 1968. See Cohen v. United States, 405 F.2d 34, 39 (8th Cir. 1968), cert. denied 394 U.S. 943, 89 S.Ct. 1274, 22 L.Ed.2d 478 (1969).