**STATE v. DANIELS.**

No. 76-510-MM-A-42.

County Court, Monroe County.

February 10, 1977.

John A. Sampson, III, Assistant State Attorney, for the state.

Alfred K. Frigola, Marathon, for the defendant.

GABRIEL MAZZEO, County Court Judge.

This cause came on to be heard before me on the 22nd day of November, 1976 and the state being present and represented by Assistant State Attorney John Sampson and the defendant being present and represented by Alfred K. Frigola, Esq., and the court having heard and considered the evidence presented by the state and by the defendant and having heard and considered the argument of counsel for the state and counsel for the defendant together with their respective memorandums of law filed herein and having reviewed the testimony as transcribed by the official court reporter and being otherwise fully advised in the premises, the court enters the following findings of fact and conclusions of law —

## Findings of fact

1. That on or about August 25, 1976 the defendant pulled his boat, the *Laura Lee*, into Keys Fisheries followed by Officers Long and Garrett of the Florida Marine Patrol who parked their boat behind the defendant's.

2. That defendant disembarked from his boat at which time Officer Long approached the defendant and asked to see the defendant's papers. Officer Long also asked and was given permission by defendant to board defendant's boat.

3. That defendant went on board his boat to get his papers and was followed by Officer Long while Officer Garrett remained on the dock.

4. That during this period several activities were taking place, i.e., the crawfish boxes were being unloaded and cursorily checked by Officer Garrett, the mates were hosing down the boat, checking the hatches, etc. In addition, the defendant opened and was checking the rudder hatch. As these hatches were being opened, Officer Long looked inside.

5. Approximately at this point defendant moved his boat forward to the fuel docks to allow other boats to come in and dock.

6. After checking the defendant's papers, Officer Long began a thorough stem to stern search of the vessel. At no time did Officer Long request or receive permission to make a thorough stem to stern search of the vessel. However, at no time did defendant object to Officer Long's presence on board, order the officer off the boat or fail to cooperate with the officer.

7. Upon checking the cabin portion of the defendant's vessel and upon removing a mattress, Officer Long discovered plastic bags containing wrung crawfish tails, undersized crawfish and stone crab claws. In order to get these items out it was necessary to remove a plywood board. Officer Long asked defendant to remove the board and defendant at first said it could not be done but later unscrewed a bolt which allowed Officer Long to remove the plastic bags. Officer Long then placed the defendant under arrest.

8. The defendant had been made to believe that it was the right of the Marine Patrol to board and make a thorough inspection of his vessel whether he refused permission or not.

## Stipulations

The state and the defendant entered into a stipulation that in this particular case there was, in fact, no search warrant issued by a court of competent jurisdiction. And, secondly, with respect to

the boarding of the defendant's boat, he (Officer Long) had no probable cause to believe that the laws of the state of Florida were being violated, or that the rules and regulations of the Department of Natural Resources were being violated at that time.

The first issue to be decided by the court is — *whether Florida Statute 370.14(3)(c) gives the power to the officers of the Department of Natural Resources to make a thorough stem to stern search of a vessel without the reasonable grounds requirement of Florida Statute 370.021(5).*

In order to answer this issue in the affirmative, the court must find that the "search" was not a search protected by the Fourth Amendment to the constitution of the United States or by Article I, Section 12 of the constitution of the state of Florida but, rather, that it was an administrative inspection of the premises.

There are several industries which are so heavily guarded and controlled by the police power of the state that the courts have upheld the right of certain law enforcement officers to enter and search (inspect) certain premises without warrant and without probable cause. Various examples of these are —

A. Law relating to *liquor law violations* (See Florida Statutes 561.07 and 562.41 (1) & (5));

B. Laws relating to the *Hotel and Restaurant Commission* (See Florida Statute 509.032(2));

C. Laws relating to *migrant labor camps* (See Florida Statute 381.482); and

D. Laws relating to *drugs and pharmacies* (See Florida Statute 465.131).

The state argues that Florida Statute 370.14(3)(c) also gives the law enforcement officers of the Department of Natural Resources the authority to make an administrative inspection of crawfish boats after they have been out fishing and that it allows them to make a thorough search of such a vessel without warrant and without probable cause. Let us examine the language of the above enumerated statutes.

A. *Liquor law violations.* Florida Statute 561.07 states — "All employees authorized by the division shall have access to and shall have the right to inspect the premises of all licensees under the beverage law . . ." Florida Statute 562.41(1) states — "Any authorized employee of the division of beverage, any sheriff, any deputy sheriff or any police officer may make searches of a person, places and conveyances of any kind whatsoever, in accordance with the laws of this state for the purpose of determining whether the

provisions of the beverage law are being violated." Florida Statute 562.41(5) states — *"Licensees, by the acceptance of their license, agree that their places of business shall always be subject to be inspected and searched* without search warrants by the authorized employees of the division of beverage and also by sheriffs, deputy sheriffs, and police officers *during business hours* or at any time such businesses are occupied by the licensee or other persons."· (Emphasis added.) (See *State v. Vocelle,* 31 So.2d 52, S.Ct. 1947 — "The sale thereof [of intoxicating beverages] is a privilege to be granted pursuant to law under restricted terms and conditions because of the injurious effect of its use on the health and general welfare," at p. 56.)

B. *Hotel and Restaurant Commission.* Florida Statute 509.032 states — "The division shall inspect, or cause to be inspected, at least three times annually . . . every public lodging and food service establishment in this state, and for that purpose *it shall have the right to entry and access to such establishments* at any reasonable time." (Emphasis added.) (Upheld — *In Re Smith,* 74 So.2d 353).

C. *Migrant labor camps.* Florida Statute 381.482 states — "The division and / or its inspectors *may enter and inspect* migrant labor camps at reasonable hours and investigate such facts, conditions, and practices or matters, as may be necessary or appropriate to determine whether any person has violated any provision of this law or rules and regulations of the division pertaining hereto are being violated." (Emphasis added.) (Note — repealed by Laws, of 1976, c. 76-168 Sec. 3, effective July 1, 1982.)

D. *Drugs and pharmacies.* Florida Statute 465.131 states — "The Florida Board of Pharmacy and its duly authorized agents, members and employees of the Department of [Criminal Law] Enforcement and its duly authorized agents, members and employees shall have the power to inspect in a lawful manner and at all reasonable hours any pharmacy or other place in the state in which drugs and medical supplies are manufactured, packed, packaged, made, stored, sold, offered for sale, exposed for sale or kept for sale for the purpose:

(1) Of determining if any of the provisions of this chapter, or any regulation promulgated under its authority, is being violated; and

(2) Of securing samples or specimens of any drug or medical supply after paying or offering to pay for sample or specimen; or

(3) Of securing such other evidence as may be needed for prosecution under this chapter." (Upheld— *Olson v. State,* 287 So.2d 313 (1973)).

Now, the common denominator of each one of the foregoing statutes is that each provides a specific grant of power to a specific agency or agencies for specific purposes. Chapter 370 of the Florida Statutes has a similar provision. Florida Statute 370.021(5) *Powers of Officers* provides in part — "Such law enforcement officers shall have the authority, without warrant, to board, inspect, and search any boat, fishing appliance, storage or processing plant, fishhouse, spongehouse, oysterhouse, or any other warehouse, building, or vehicle engaged in transporting or storing any fish or fishery products. *Such authority to search and inspect without a search warrant is limited to those cases in which such law enforcement officers have reason to believe that fish or any salt water products are taken or kept for sale, barter, transportation, or other purposes in violation of laws or rules promulgated under this law."* (Emphasis added.) This statute was discussed in *Hill v. State*, 238 So.2d 608, S.Ct. 1970. In that case the defendant was found guilty of landing shrimp without a permit and the defendant would not apply for a permit because it contained a statement that he agrees to permit agents of the Board of Conservation to board his vessel at any time. The defendant argued that that requirement violated his constitutional rights. The state's position was that the permission to board was required solely to allow agents to determine whether the required permit was being carried on board the vessel. The Supreme Court held that the required permission to board on the application was within the regulatory power of the Director of Conservation. However, the court made the distinction between boarding a vessel for the purpose expressed above as opposed to a search of the vessel and a seizure of any illegally obtained cargo and *held* that while the police can board a vessel, the authority to search and inspect that vessel without warrant was *limited to the authority of Florida Statute 370.021(5)* (requiring reasonable cause to believe that a law was being violated.)

Now, let us compare the language of the statutes quoted above (Florida Statutes 561.07, 562.041(1)&(5), 509.032(2), 381.482, 465.131 and 370.021(5)) with the language of the first sentence of Florida Statute 370.14(3)(c) which states — "The crawfish license must be on board the boat, and both the license and the harvested crawfish shall be subject to inspection at all times." This sentence, according to the record, is the provision that the state is relying on to permit warrantless thorough searches of crawfish boats without probable cause. Where are the grants of power common to the above (and other like) statutes? Where is the grant of power even to board a vessel? To imply such grants of power, *especially* in view of the fact that Florida Statute 370.021(5) still exists and has not been substantially altered or repealed would be

to thoroughly distort the plain language of 370.14(3)(c). Florida Statute 370.14(3)(c) is neither vague nor is it ambiguous. It requires the crawfish license to be on board the boat at all times and it requires that the license and the harvested crawfish be subject to inspection at all times. The crawfisherman shall make all harvested crawfish subject to inspection at all times. If the legislature had intended to give the officers of the Department of Natural Resources such broad powers of search and seizure (administrative inspections) it would have done so as it did in the other statutes discussed above. The statute goes on to say — "The crawfish license number must be prominently displayed above the topmost portion of the boat so as to be easily and readily identified. It is unlawful for any person to molest any traps, lines, or bouys, as defined herein, belonging to another without permission of the licenseholder." Any violation of all or part of Florida Statute 370.14(3)(c) will subject the violator to the penalties provided in Florida Statute 370.14(7).

*Finding:* Florida Statute 370.14(33(c) does not permit a thorough, stem to stern search of a crawfish boat without warrant and without probable cause. Its language is clear. The officers of the Department of Natural Resources must continue to be bound by the provisions of Florida Statute 370.021(5) with regard to searches and seizures.

The next question presented to the court is — *whether the defendant voluntarily consented to a thorough search of his vessel.*

There may be a distinction drawn between administrative searches and criminal searches. In *Camara* v. *Municipal Court,* 387 U.S. 523, and *See* v. *Seattle,* 387 U.S. 541, the United States Supreme Court held for the first time that administrative inspections of commercial and non-commercial premises are generally subject to Fourth Amendment requirements. However, in administrative inspections the courts have adopted a standard of consent that is less stringent than that required for criminal searches. See *U.S.* v. *Thrifmart, Inc.,* 429 F. 2d 1006 (9th Cir.), cert. denied, 400 U.S. 926 (1970), reh. denied 400 U.S. 1002 (1971)). But where there is evidence of intimidation, coercion, or *misrepresentation,* the courts will find consent to be invalid. See *U.S.* v. *Kramer Grocery,* 418 F. 2d 987 (8th Cir. 1969), and *U.S.* v. *Anile,* 352 F. Supp. 14 (N.D. W. Va. 1973).

*Findings:* In the instant case the court finds from the record that there was consent to board the vessel while the defendant went to get his papers but that there was no valid consent, either under a criminal search test or an administrative search test, for thorough search of the vessel.

The court is not unaware of the gravity of this case. The court is also not unaware that the evidence that is being suppressed is not like a confession which may have been coerced and may not be the truth. In this case what is being suppressed *is* truth. The court is also not unaware of the seriousness of the problems of the Department of Conservation and of the damage that is being done to the crawfish industry especially by violations of the magnitude of the instant case. The court abhors the release of a person caught red-handed with violations of this magnitude and were such another case properly brought before this court, upon conviction, the court will deal most severely with the violators.

*Order:* The court having determined that the search of the defendant's vessel was made in violation of the provisions of Florida Statute 370.021 (5), the Fourth Amendment to the United States Constitution, and Article I, Section 12 of the Florida Constitution, it is ordered that the defendant's amended motion to suppress evidence filed on November 2, 1976 is granted on the basis set forth in this opinion.