Max ROSS, et al., Plaintiffs,

v.

Ed HINTON, Jr., et al., Defendants.

No. C2–86–1531.

United States District Court,
S.D. Ohio, E.D.

June 4, 1990.

Jeffrey M. Silverstein, Dayton, Ohio, for plaintiffs.

Bennett A. Manning, Asst. Atty. Gen., Columbus, Ohio, for defendants.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

This matter is before the Court on a Motion of Defendants, Ed Hinton, Jr., William Willis, and Janice Viau, for Summary Judgment. (Fed.Rule of Civ.Pro. 56). Plaintiffs allege that the defendants' action constituted an illegal search and seizure in violation of the Fourth Amendment to the United States Constitution, violated their property and liberty interests protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, was an act of retaliation protected against by 42 U.S.C. § 1983 and violated the plaintiffs' rights to privacy under both federal and state law. Jurisdiction of this Court is based on 28 U.S.C. §§ 1331 and 1343.

## FACTS

The Ohio Department of Natural Resources ("ODNR") operates a residential camp near MacArthur, Ohio under the auspices of its Division of Civilian Conservation. The camp, Camp Zaleski, is a part of the ODNR Civil Conservation Corps Program and functions to teach work habits and discipline to young people ages 18 to 24 who are out of school and otherwise unemployed.

Plaintiff Max Ross, the Zaleski Camp Manager, and plaintiff Jean Ross, the Zaleski Camp Corps Member Development

Coordinator, are constitutionally challenging the June 27, 1986 search of their offices at Camp Zaleski by the defendants, officials at ODNR.

The catalyst for the search was a letter received by Joseph J. Sommer, Director of ODNR, from the pastors of two MacArthur, Ohio churches. The letter alleged incidents of staff mistreatment, discrimination, vehicle misuse, theft of state property, and physical and mental abuse of corps members at Camp Zaleski. On June 24, 1986, Director Sommer, believing that an investigation of the allegations was warranted, dispatched the Deputy Director of Recreation Management at ODNR, John Piehowicz, to Camp Zaleski. Piehowicz was accompanied to the camp by both defendant Ed Hinton, Chief of ODNR's Division of Civilian Conservation, and an administrative assistant. Piehowicz, defendant Hinton, and the administrative assistant met with the pastors, visited the camp, and interviewed camp staff and corps members. Piehowicz reported the findings to Director Sommer. Based on these findings, and because Max Ross was a personal friend, Director Sommer decided an independent investigation by the State Highway Patrol would be the best method of determining the truth or falsity of the pastors' allegations. However, before the Highway Patrol investigation could be formally requested, Deputy Director Piehowicz received a telephone call from one of the pastors who believed Max Ross was moving or taking files from Camp Zaleski.

After Piehowicz informed the Highway Patrol of this latest development, the Highway Patrol advised Piehowicz to secure the files at Camp Zaleski. Piehowicz interpreted this to mean confiscate the files and bring them back to Columbus. Piehowicz contacted defendant Hinton and defendant William Willis, Field Operations Manager for the Division of Civilian Conservation, and told them to make plans immediately to travel to Camp Zaleski. Before leaving Columbus, defendant Hinton telephoned Max Ross to tell him a team would be visiting the camp to secure the files. Max replied that Hinton could come down any-

time and that the files were available. This telephone conversation was tape recorded.

In addition to defendants Hinton and Willis, defendant Janice Viau, Director of Personnel for the Division of Civilian Conservation, made the trip to Camp Zaleski. Defendant Viau was asked to accompany defendants Hinton and Willis because, as personnel director, she would be familiar with personnel records. However, no efforts were made to bring along an individual who would be specifically familiar with fiscal records.

On arrival at Camp Zaleski defendant Hinton posted a notice informing camp officials to deliver certain documents into his personal custody. Plaintiff Max Ross was on medical leave when the defendants arrived, and the camp was being managed by Dewey McDaniel, Assistant Camp Manager. A search was made for personnel, purchasing and payroll records which, if found and relevant, were boxed and taken back to Columbus. The plaintiffs' offices and desks were searched for pertinent records, along with the offices and desks of McDaniel, the camp secretary and other camp officials.

The search of Max Ross' office was conducted by all three defendants. Jean Ross was also present at defendant Hinton's request. While there is some dispute over whether or not Max Ross' office was initially locked, plaintiff concedes his desk was unlocked. All documentation was scanned to determine whether or not it was relevant to the records being sought. The time spent in Max Ross' office was not more than 30 minutes.

The search of Jean Ross' office was conducted by defendant Willis with Jean Ross present. Nothing was taken from her office and no personal items were examined. Her office was not locked and only one desk drawer, a drawer containing juvenile records, was locked.

A total of approximately 10 boxes of files were removed from the camp, inventoried and stored in defendant Hinton's office in Columbus until they were eventually turned over to the Highway Patrol for an investigation. Although Max Ross did re-

quest a list of the files taken, he was never provided with one.

## STANDARD OF REVIEW

In considering this motion, the Court is mindful that the standard for summary judgment "mirrors the standard for a directed verdict under [Rule 50(a)], which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), citing: *Brady v. Southern Ry. Co.*, 320 U.S. 476, 479–480, 64 S.Ct. 232, 234–235, 88 L.Ed. 239 (1943). Thus, the Supreme Court concluded in *Anderson* that a judge considering a motion for summary judgment must "ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair minded jury could return a verdict for the plaintiff on the evidence presented." 477 U.S. at 252, 106 S.Ct. at 2512.

■ Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In essence, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. 477 U.S. at 252, 106 S.Ct. at 2512.

■ Such an inquiry necessarily implicates the evidentiary standard of proof that would apply at the trial on the merits. As a result, the court must view the evidence presented through the prism of the substantive evidentiary burden. Rule 56(e) therefore requires that the nonmoving party go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate *specific facts* showing that there is a genuine issue for trial. *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (Emphasis Added). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552.

In *Banks v. Rockwell International N. Am. Aircraft Operations,* 666 F.Supp. 1053 (S.D.Ohio 1987), this district Court, Graham J., enunciated the importance of granting summary judgment in appropriate situations:

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed to secure the just, speedy and inexpensive determination of every action." Citing: *Celotex Corp. v. Catrett,* 477 U.S. 317, at 324 [106 S.Ct. 2548, at 2553] (quoting Fed.R.Civ.P. 1) *Anderson,* 477 U.S. 242, at 252 [106 S.Ct. 2505, at 2512].

■ Thus, the mere existence of a scintilla of evidence in support of a plaintiff's claim is insufficient—there must be evidence upon which a jury could reasonably find for the plaintiff. With the proper standard of review in mind, the Court will address the merits.

## LAW AND ANALYSIS

*I. Eleventh Amendment*

■ The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state". U.S. Const. Amend. XI. The immunity afforded by the Eleventh Amendment has been extended to bar suits in federal court brought against a state by one of its own citizens. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). It is also well established that even if individual officials are named in the suit and the state itself is not named,

the Eleventh Amendment serves as a bar. *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). ODNR is an agency created and controlled by the Ohio legislature and comprises a part of the state for Eleventh Amendment purposes. *See* Ohio Rev.Code Ann. § 2743.01(A) (Anderson 1981). ODNR administrators acting in their official capacities are therefore entitled to immunity from suit in federal court, unless Ohio has consented to jurisdiction in the federal forum.

Although Ohio has, by statute, waived its sovereign immunity and consented to be sued in the Ohio Court of Claims, it has not waived its Eleventh Amendment immunity from suit in federal courts. *See* Ohio Rev. Code Ann. § 2743.02(A)(1) (Anderson 1981); *Ohio Inns, Inc. v. Nye*, 542 F.2d 673 (6th Cir.1976), *cert. denied*, 430 U.S. 946, 97 S.Ct. 1583, 51 L.Ed.2d 794 (1977).

■ The Eleventh Amendment prohibits actions by private parties that seek to impose a liability that is payable from public funds within the state treasury. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Plaintiffs' prayer for relief seeks compensatory and punitive damages from defendants acting in their official capacities. In this respect, plaintiffs are attempting to impose monetary liability upon ODNR administrators that would be paid from the state treasury. The Eleventh Amendment bars such suits.

■ Therefore, the Eleventh Amendment mandates that defendants' Motion for Summary Judgment on the issue of monetary damages against ODNR administrators in their official capacities be **GRANTED.** However, the Eleventh Amendment alone will neither bar an action against the defendants individually for damages nor an action against defendants in their official capacities for prospective injunctive relief. *Nix v. Norman*, 879 F.2d 429 (8th Cir. 1989).

*II. Qualified–Good Faith Immunity*

■ Apart from the Eleventh Amendment, the doctrine of good faith immunity may act as a bar to claims against defen-

dants in their official capacities for prospective injunctive relief. In general, state officials are entitled to immunity from § 1983 suits for actions taken in good faith. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Good faith is defined in objective terms as "clearly established statutory or constitutional rights of which a reasonable person would have known". *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* In order for a plaintiff to overcome a government official's good faith immunity, he must show that the constitutional rights at issue were clearly established at the time the alleged unconstitutional conduct took place.

■ The conduct at issue here, the search of the plaintiffs' offices and desks, took place in June of 1986. To defeat defendants' good faith immunity defense, plaintiffs must show that in June of 1986 there was a line of judicial decisions indicating that government employers or supervisors may not search the work place of public employees because that is an area where society has found a reasonable expectation of privacy and, that such a search was unreasonable.

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ..." U.S. Const. amend. IV. "The basic purpose of [the Fourth] Amendment ... is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Camara v. Municipal Court*, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967). Because the search of the plaintiffs' offices and desks was conducted by state officials, the Fourth Amendment is implicated. The

principle that state action triggers the Fourth Amendment has been clearly established and the defendants are held to have known this. However, before *this* search can be deemed unconstitutional, two issues must be addressed. First, the Fourth Amendment only applies where "an expectation of privacy that society is prepared to consider reasonable is infringed". *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). The plaintiffs must show that the offices and desks of public employees is such an area and that this principle was clearly established as of June 1986. Second, the Fourth Amendment prohibits only unreasonable searches. *See* U.S. Const. amend. IV. If the plaintiffs prove that they had a reasonable expectation of privacy in their public offices and desks, then they must show that defendants' actions in searching those areas were clearly established as unreasonable, and therefore, unconstitutional.

### A. Expectation of Privacy That Society Is Prepared to Consider Reasonable

The search conducted by ODNR officials in this case involved the search of the offices and desks of the plaintiffs. Before June of 1986, no United States Supreme Court case had specifically addressed the Fourth Amendment rights of public employees to be free from searches of their offices and desks. However, there had been several cases discussing Fourth Amendment privileges with respect to private offices.

██ In order for the Fourth Amendment to be violated, the place searched must be one in which there is a reasonable expectation of freedom from governmental intrusion. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In *Mancusi v. DeForte*, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968) the Court addressed the issue of whether or not an employee's office was such a place. DeForte was a Teamsters Union official whose union office was searched in connection with a conspiracy and extortion investigation. DeForte challenged the search on

the grounds that it was unconstitutional absent a warrant. The Court recognized that a plaintiff has long since been permitted to challenge a search of his office as well as his home. *Id.* at 369, 88 S.Ct. at 2124. DeForte had an expectation that he would not be disturbed except by personal or business invitees, and that records would not be taken except with his permission or that of his union superiors. *Id.* "This expectation was inevitably defeated by the entrance of state officials, their conduct of a general search, the their removal of records which were in DeForte's custody." *Id.*

The *Mancusi* case is distinguishable from the case at bar however. The state officials in *Mancusi* were unrelated to union administration, but the ODNR officials who searched the plaintiffs' offices were not only ODNR officials, but the plaintiffs' employer. Dicta in the *Mancusi* case indicates that a search by superiors or a search to which DeForte's superiors would have consented would not have violated a reasonable expectation of privacy. *Id.* The *Mancusi* case, therefore, does not clearly establish the unconstitutionality of the ODNR official's conduct that would defeat the good faith immunity.

The Supreme Court has more recently addressed the specific issue of the rights of public employees to be free from searches of their offices by their public employers. *O'Connor v. Ortega*, 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987). However, this case was decided after the search of Max and Jean Ross' offices and has little bearing on the issue of whether or not the constitutionality of such a search was clearly established at that time. However, the Court indicated that "[w]e have no talisman that determines in all cases those privacy expectations that society is prepared to accept as reasonable". *Id.* at 715, 107 S.Ct. at 1497. In addition, the Court noted that "[g]iven the great variety of work environments in the public sector, the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis". *Id.* at 718, 107 S.Ct. at 1498. While *O'Connor* is a legal development subsequent to the

search at issue, the fact that the Supreme Court has still not set down specific parameters for a search of a public employee's office by his public employer further supports the notion that the unconstitutionality of such a search was not clearly established.

### B. Reasonableness of the Search

■ Assuming *arguendo* that there was a reasonable expectation of privacy in the plaintiffs' offices and desks, the plaintiffs must still prove that it was clearly established that such a search was unreasonable.

■ First, plaintiffs' claim that the search conducted by ODNR officials was a criminal search requiring a search warrant and the other procedural safeguards associated with a search by the police. Without a warrant based on probable cause, they claim such a search was unreasonable. However, potential criminal liability does not turn every search into one requiring such safeguards. *E.Z. v. Coler*, 603 F.Supp. 1546, 1555 (N.D.Ill.1985). Because the defendants, as employers, searched only to retrieve business records for further investigation by the Highway Patrol, the search may not be deemed one to obtain evidence of criminal activity. Although the investigative incentive alleged some criminal misconduct, the defendants were sent to Camp Zaleski to confiscate ODNR business records only. They did not search plaintiff Max Ross' car nor the plaintiffs' house. Therefore, the search by ODNR officials did not require the procedural safeguards associated with a search by the police.

Plaintiffs' next claim that the search was an administrative search and required the safeguards associated with an administrative search in order to be deemed reasonable. While in June 1986, there were no United States Supreme Court cases specifically addressing the reasonableness of an office search by a public employer, there were a line of cases discussing the reasonableness of an administrative search.

Typical Fourth Amendment cases address the search of an area for evidence of criminal activity. However, government officials may also perform routine searches of homes or places of business in order to enforce public health, housing or fire ordinances. The Court in *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), reviewing an inspection plan mandated by a municipal housing code, held that such an administrative search required a search warrant. The *Camara* Court stated that "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant". *Id.* at 528–529, 87 S.Ct. at 1730–1731. Reasonableness requires balancing the rights of the individual against the interests of the government.

■ The individual's rights do not differ depending on whether the search is an administrative or a criminal search. "It is surely anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior". *Id.* at 530, 87 S.Ct. at 1732. In the balance, then, a plaintiff's right to be free from an unreasonable search may require the that the defendant obtain a warrant.

■ The government's interest in a typical administrative search, enforcing the municipal code and therefore protecting the welfare of citizens, is not damaged by taking the time to obtain a warrant. However, in the case at bar, the government's interest in securing the files may have been damaged by taking the time to obtain a warrant. In addition, the search of the plaintiffs' offices and desks is distinguishable from a typical administrative search, because it was not to enforce a public health, housing or fire ordinance. Therefore, at the time the search occurred, it was not clearly established that such a search was unreasonable.

### C. Summary

Because it was not clearly established in June of 1986 that the search of a public employee's office by a public employer in-

fringed upon a reasonable expectation of privacy, and because, in any event, it was not clearly established that such a search was unreasonable, the plaintiffs' have failed to defeat the defendants' good faith immunity. The defendant's Motion for Summary Judgment on the issue of prospective injunctive relief, not originally barred by the Eleventh Amendment, must be **GRANTED.**

### III. Waiver

 In the alternative, defendants move for summary judgment alleging that plaintiff Max Ross consented to a search of his office and desk and is therefore barred from asserting a Fourth Amendment claim.[1] A search that would otherwise be prohibited is valid if authorized by consent. The Supreme Court's often stated understanding is that most administrative searches are unobjectionable because they are conducted with consent, and that the standards for consent to an administrative search are less stringent than the standards for consent to a criminal search. *Coler*, 603 F.Supp. at 1556. Consent must be judged by the totality of the circumstances. *INS v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). In the administrative search context, courts have taken into account a number of factors, including whether there is evidence of intimidation, coercion or misrepresentation. *U.S. v. Kramer Grocery*, 418 F.2d 987 (8th Cir.1969).

 Defendant Hinton telephoned Max Ross immediately before leaving Columbus for Camp Zaleski and this telephone conversation was tape recorded. Defendant Hinton gave Max Ross notice over the phone that he would soon be arriving at Camp Zaleski to look at some records, and Ross made no objection. Max Ross informed defendant Hinton that the records would be available and that Hinton could visit the camp at any time.

Max Ross contends that he consented only to the defendants' presence at the camp to "look at the files" and not to search his office and desk. However, Max Ross was the director of Camp Zaleski and it is not unreasonable to suspect that some of the business records may have been kept in his office or desk. Max Ross was given the opportunity to object to the search and instead he advised defendant Hinton that he could come down to the camp any time. Max Ross consented to the search and cannot now challenge its validity. Therefore, defendants' Motion for Summary Judgment on the issue of plaintiff Max Ross' consent to the search must be **GRANTED.**

### IV. Retaliatory Conduct

 In paragraph 24 of the plaintiffs' complaint, plaintiffs allege that "the actions of Defendant Hinton and those under his supervision constitute retaliation against Plaintiff Max Ross for certain complaints made previously to the Director of the Department about Hinton's performance in his official capacity." Plaintiff maintains this cause of action under 42 U.S.C. § 1983 which protects individuals against a violation of their rights secured by the United States Constitution and federal laws by persons acting under color of state law. *Parratt*, 451 U.S. at 535, 101 S.Ct. at 1912.

First, plaintiff must be basing this § 1983 retaliation claim on the alleged Fourth Amendment violation and not other federal legislation regulating employment practices.[2] Plaintiff appears to have no claim under Title VII or other federal employment discrimination legislation. Plaintiff does not claim employment discrimination based on race, color, religion, sex or

---

1. To establish a § 1983 claim, two elements are required: (1) the conduct in controversy must be committed by a person acting under color of state law, and (2) the conduct must deprive the plaintiff of rights, privileges, or immunities *secured by the Constitution or laws of the United States. Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). (Emphasis Added). If defendants' conduct does not give rise to a violation of the rights secured by the laws of the United States or the Constitution, then no § 1983 claim would lie.

2. It is not this Court's practice to supply arguments for the parties, but for purposes of clarity has decided to address and attempt to comprehend the retaliation claim.

national origin, (*see* 42 U.S.C. § 2000e–2) nor can he claim retaliatory discharge because he was not discharged. (*See* 42 U.S.C. § 2000e–3(a)). Therefore, plaintiff must establish a cause of action under § 1983 using the alleged Fourth Amendment violation. In order to establish a prima facie § 1983 cause of action based on a constitutional violation, the plaintiff must prove that the defendant's conduct actually caused plaintiff's constitutional deprivation.

Second, both plaintiffs and defendants maintain that the § 1983 claim attacks defendants in their individual capacities. Although a prerequisite to a § 1983 claim is action under color of law, a plaintiff can bring a § 1983 action against government officials in their individual capacities and still meet this requirement. *Scheuer v. Rhodes*, 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974). The plaintiff is then suing the defendants personally for their conduct as state officials. Because the monetary damages sought by the plaintiff would not then be paid out of the state treasury, the Eleventh Amendment may not be implicated. However, qualified immunity will still come into play. *Folsom Investment Co. v. Moore*, 681 F.2d 1032 (5th Cir.1982); *Buller v. Buechler*, 706 F.2d 844 (8th Cir.1983).

Assuming *arguendo* that plaintiff Max Ross could prove a constitutional violation in the search of his office and desk, and assuming that he could prove that the defendants' conduct actually caused this constitutional deprivation, where there was no clearly settled law at the time defendants acted, defendants may escape § 1983 damages liability under good faith immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

The good faith immunity defense after *Harlow* is based on purely objective standards. *Id.* at 818, 102 S.Ct. at 2738. By alleging defendants acted in retaliation,

plaintiffs are challenging the motives of the defendants in conducting the search which would bring into play their subjective state of mind. The relevant issue, however, is not whether defendants had an ulterior motive for searching the plaintiffs' offices and desks, but whether they actually knew they were in violation of clearly established constitutional principles. As noted earlier, it was not clearly established in June 1986 that a public employer searching the office and desk of a public employee was unconstitutional.

Therefore, qualified immunity is a defense to the retaliation claim and defendants' Motion for Summary Judgment on that issue is **GRANTED.**

## V. State Law Theft Claim

Finally, plaintiffs allege in paragraph 12 of their complaint that "Defendant Hinton unlawfully removed from Plaintiff Max Ross' desk certain personal documents and money unrelated to departmental business". Defendants argue in their Motion for Summary Judgment that this is merely a state law theft claim unrelated to any cognizable federal claim.

While the United States Supreme Court held in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) that the federal courts do have the power to exercise pendent jurisdiction over state law claims when the state and federal claims derive from a common nucleus of operative fact, the Court clearly recognized that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *Id.* at 725–26, 86 S.Ct. at 1138–39.

In this case all of the federal constitutional claims have been dismissed under the Eleventh Amendment, Good Faith Immunity of State Officials, and the Doctrine of Waiver which leaves only the state law theft claim.[3] This court will not exercise

---

**3.** Plaintiffs in their complaint allege both invasion of privacy under federal and state law, as well as a violation of liberty and property interests of the Fourteenth Amendment. Yet nowhere throughout their briefs do they define what property interest plaintiffs had nor where

there was a deprivation of liberty or an invasion of privacy. Since plaintiffs chose not to address those claim and have offered no law for their propositions, this Court will not address those claims. As such, any claim for said relief afore-

pendent jurisdiction over an issue that should so clearly be dealt with in state court.

This court **DISMISSES** the pendent state law theft claim.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment of defendants Ed Hinton, Jr., William Willis and Janice Viau is GRANTED. This case is therefore DIS-MISSED.

IT IS SO ORDERED.

mentioned within this footnote is hereby de- nied.